588 A.2d 13

COMMONWEALTH of Pennsylvania

v.

Barry GIBBS, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 3, 1990.

Filed Jan. 7, 1991.

Reargument Denied March 21, 1991.

D. Benjamin Van Steenburgh, III, Public Defender, Milford, for appellant.

Michael Kane, Deputy Atty. Gen., Harrisburg, for Com., appellee.

Before MONTEMURO, JOHNSON and CERCONE, JJ.

JOHNSON, Judge:

This is an appeal from the order denying appellant Barry Gibbs' petition to preclude the Commonwealth from seeking the death penalty at his second trial upon remand based upon statutory aggravating circumstances listed in 42 Pa. C.S. § 9711(d) not found by the sentencing jury at his first trial. We are asked to decide whether the Commonwealth's seeking of these aggravating circumstances in the second trial violates a defendant's constitutional right not to be twice put in jeopardy. This precise question has been answered in the negative by the Supreme Court of the United States in *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). Therefore, the Commonwealth may seek the aggravating circumstances not found at the first trial. The Commonwealth may also seek the aggravating circumstance of killing a peace officer, as the victim, a security guard, was empowered under 53 P.S. § 3704 (the "Night Watchmen's Act"). However, unless Gibbs contracted to kill the victim specifically, the Commonwealth may not advance the contract killing aggravating factor.

Gibbs was solicited by the wife of a Pike County, Pennsylvania housing development security guard to kill her husband. It is not clear whether Gibbs also agreed to kill another guard, the ultimate and only victim. The wife promised Gibbs, then eighteen, money, a leather jacket and a motorcycle or boat in exchange for his services. On the night of March 27, 1984, Gibbs accepted the offer. Accompanied by the wife and three others, he found the husband and the other guard in the housing development security office. Gibbs fired a shot, missing the husband but killing the other man.

On December 14, 1984 a jury convicted Gibbs of first degree murder, criminal attempt to commit homicide, criminal conspiracy to commit homicide and aggravated assault. At the sentencing stage of the trial, the court instructed the jury on all statutory aggravating circumstances as set forth in 42 Pa.C.S. § 9711(d). The jury found as aggravating circumstances "Peace Officer; Contract for Pay; Premedi-

tated: Lethal Weapon." Verdict as entered upon the docket, December 14, 1984. Pursuant to 42 Pa.C.S. § 9711(c)(1)(iv), having determined that the aggravating circumstances of the crime outweighed the mitigating circumstances, the jury returned a verdict of a sentence of death. Gibbs appealed his judgment of sentence directly to the Pennsylvania Supreme Court pursuant to 42 Pa.C.S. § 9711(h). The Supreme Court, finding that his confession was involuntarily given, vacated the judgment of sentence and remanded for a new trial. *Commonwealth v. Gibbs*, 520 Pa. 151, 553 A.2d 409 (1989), *cert. denied*, — U.S. —, 110 S.Ct. 403, 107 L.Ed.2d 369 (1989).

At commencement of the second trial, on February 15, 1990, the Commonwealth filed a Notice of Aggravating Circumstances in which it stated its intention to seek a sentence of death based upon the following statutory aggravating circumstances set forth in 42 Pa.C.S. § 9711(d): 1) The victim ... was a peace officer who was killed in the performance of his duties. 2) The defendant was paid and had contracted to be paid by another person and had conspired to be paid by another person for the killing of the victim. 3) In the commission of the offense, the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense. On March 16, 1990 the Commonwealth filed a Motion to Add Additional Aggravating Circumstance, that Gibbs committed a killing while in perpetration of a felony. 42 Pa.C.S. § 9711(d).

On February 20, 1990, Gibbs filed his Omnibus Pre-trial motion in which he moved to "Preclude Death Penalty Based on Insufficient Evidence at Prior Trial" of the Commonwealth's original three grounds. On March 21, 1990 Gibbs filed a motion in opposition to the Commonwealth's notice that it would seek the death penalty based partly upon the "grave risk of harm to another" factor. After briefing and argument, on March 21, 1990, the court denied Gibbs' motions to preclude the Commonwealth from seeking as aggravating circumstances that the victim was a peace officer, that the crime was a contract killing and that the

act created grave risk of harm to another. By the same order the court granted the Commonwealth's request to add as an aggravating circumstance killing while perpetrating a felony.

On March 27, 1990, the trial court, in response to Gibbs' petition, issued an order pursuant to 42 Pa.C.S. § 702(b) certifying that its March 21 order involved controlling questions of law and that an appeal would materially advance the ultimate termination of the matter. It did not find that the double jeopardy claims raised by Gibbs were frivolous. On April 3, 1990, Gibbs filed a notice of appeal, and on April 6, 1990 Gibbs filed a petition for review and for permission to appeal. The Commonwealth filed a motion to quash the direct appeal. We granted Gibbs' petition and denied the Commonwealth's motion to quash by order of June 27, 1990. Having ruled thus, we determined that the order in question met the requirements for appealability.

 We now address a preliminary issue, that of the Superior Court's jurisdiction in this case. We recognize that the power to review appeals from judgment of a sentence of death is vested exclusively with the Pennsylvania Supreme Court, 42 Pa.C.S. § 9711(h). The case now before us is not an appeal from a judgment of sentence of death. Rather, the Supreme Court has vacated the death sentence and remanded for a new trial; the appeal in question is from a certified pre-trial order upon commencement of Gibbs' new trial. The Superior Court has exclusive appellate jurisdiction over final orders of courts of common pleas unless otherwise provided by statute. 42 Pa.C.S. § 742. Interlocutory appeals, where authorized, are within the jurisdiction of the appellate court having jurisdiction over final orders in such matters. 42 Pa.C.S. § 702; Pa. R.A.P. 701, 42 Pa.C.S. The note to Pa.R.A.P. 702, discussing section 702(b), which gives the Supreme Court exclusive jurisdiction over appeals from sentences for lesser offenses imposed along with a sentence of death, is instructive:

> Ordinarily Rule 701 will have no application to matters within the scope of Subdivision (b), since that subdivision

is contingent upon entry of a final order in the form of a sentence of death; *the mere possibility of such a sentence is not intended to give the Supreme Court direct appellate jurisdiction over interlocutory orders in homicide and related cases since generally a death sentence is not imposed.*

Pa.R.A.P. 702, 42 Pa.C.S., Note (emphasis supplied).

In concert with this reasoning, this court has entertained, rather than transferring to the Supreme Court, interlocutory appeals involving death penalty statute issues where the judgment of sentence of death has not yet been entered. *See Commonwealth v. Rende,* 335 Pa.Super. 509, 485 A.2d 9 (1984), an appeal from a pre-trial order refusing to bar the death penalty on double jeopardy grounds; we quashed because the appeal raised issues not cognizable in a pre-trial posture. Similarly, we have entertained post-trial appeals raising death penalty issues where no death penalty was imposed. *See Commonwealth v. Karabin,* 362 Pa.Super. 300, 524 A.2d 516 (1987), *affirmed* 521 Pa. 543, 559 A.2d 19 (1989), a Commonwealth appeal from the trial court's vacating of the sentence of death, in which we decided that the trial court improperly presented the aggravating circumstance to the jury. We conclude that, where, as here, no sentence of death has been entered and appealed from, the Superior Court has exclusive jurisdiction pursuant to 42 Pa.C.S. § 702 over this interlocutory, certified order.

We now address the merits. Gibbs argues that the Commonwealth should be precluded from seeking the death penalty on the basis of "grave risk of death to another," 9711(d)(7), and "killing while perpetrating a felony," 9711(d)(6) because both factors, argued and not found by the jury in the first trial, should now be precluded by double jeopardy principles. Gibbs also argues that it is improper for the Commonwealth to rely upon the Killing of a Peace Officer ground, 9711(d)(1), because the victim, a privately employed security guard at a housing development, is not a peace officer as defined in 18 Pa.C.S. 501. Last, he avers that the Commonwealth may not invoke the Contract Kill-

ing factor, 9711(d)(2), because the victim was not the subject of the contract.

At his double jeopardy argument, Gibbs asserts that, by not finding the two statutory aggravating factors of grave risk of death to another and killing while perpetrating a felony, the sentencing jury in the first trial "acquitted" him of these factors. Therefore, Gibbs claims that, by submitting these grounds in the second trial, the Commonwealth violates his constitutional right not to be twice put in jeopardy. This precise issue was before the Supreme Court of the United States in *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). In *Poland*, a jury convicted the defendants (brothers) of first-degree murder. Pursuant to the then-effective Arizona capital sentencing statute, the trial judge, sitting as finder of fact, found the aggravating circumstance of crime committed in especially heinous manner but found that the aggravating circumstance of pecuniary gain was not present. On appeal, the Arizona Supreme Court vacated the conviction. It also held that the evidence was insufficient to support the "especially heinous" circumstance, but that the trial court erred in finding that the circumstance of pecuniary gain was not present and suggested that it could be found in the future.

Following the defendants' convictions at the second trial, the prosecution argued the circumstances of "especially heinous" and of "pecuniary gain." In addition, it presented a circumstance not argued at the first trial, previous conviction of a felony involving the threat or use of violence to another person. The trial judge found all three present and again sentenced the defendants to death. The defendants argued, on appeal to the Arizona Supreme Court, that the Arizona Supreme Court's determination in the first appeal that the evidence failed to support the "especially heinous" aggravating circumstance barred reimposition of the death penalty. The court rejected this argument, writing that the holding that the evidence was insufficient to support this ground "was not tantamount to a death penalty 'acquittal.'" *Poland*, 476 U.S. at 151, 106 S.Ct. at 1753, 90

L.Ed.2d at 129, *quoting State v. Poland (Patrick),* 144 Ariz. 388, 404, 698 P.2d 183, 199 (1985). The court then again found the evidence insufficient to support "especially heinous" but sufficient to support "pecuniary gain" for both brothers and found the "prior conviction involving violence" ground for one brother.

The Supreme Court of the United States granted certiorari to decide whether reimposing the death penalty violated the double jeopardy clause, because, as put by the defendants, the Arizona Supreme Court in the first appeal "acquitted" them of the death penalty by finding the evidence insufficient to support the sole aggravating circumstances found by the sentencer, "especially heinous manner." The defendants relied upon *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), as does Gibbs in this case. In *Bullington* the court held that a defendant sentenced to life imprisonment by a capital sentencing jury is protected by the double jeopardy clause against imposition of the death penalty in the event that he obtains reversal of his conviction and is retried and reconvicted. *Poland,* 476 U.S. at 152, 106 S.Ct. at 1753, 90 L.Ed.2d at 130.

The *Bullington* court held that a jury's decision to impose a life sentence because they found no aggravating circumstances is a conclusion that the prosecution has not proved its case with regard to the existence of a basis for the death penalty, and that such a finding is an "acquittal" of the death penalty, a decision that, under the double jeopardy clause, cannot be revisited. The *Poland* court distinguished *Bullington:*

> We reject the fundamental premise of petitioners' argument, namely, that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an "acquittal" of that circumstance for double jeopardy purposes. [*Bullington* ] indicates that the proper inquiry is whether the sentencer or reviewing court has "decided that the prosecution has not proved its case" that the death penalty is appropriate.

We are not prepared to extend [*Bullington* ] further and view the capital sentencing hearing as a set of mini-trials on the existence of each aggravating circumstance....

Aggravating circumstances are not separate penalties or offenses, but are "standards to guide the making of [the] choice" between the alternative verdicts of death and life imprisonment (citation omitted). Thus, under Arizona's capital sentencing scheme, the judge's finding of any particular aggravating circumstance does not of itself "convict" a defendant (i.e. require the death penalty), and the failure to find any particular aggravating circumstance does not "acquit" a defendant (i.e., preclude the death penalty).

*Poland v. Arizona*, 476 U.S. at 155–156, 106 S.Ct. at 1755, 90 L.Ed.2d at 132. To the *Poland* court, the significant distinction is that:

"the law attaches particular significance to an acquittal" (citations omitted).

. . . .

This concern with protecting the finality of acquittal is not implicated when, as in these cases, a defendant is sentenced to death, i.e., "convicted." There is no cause to shield such a defendant from further litigation; further litigation is the only hope he has. The defendant may argue on appeal that the evidence presented at his sentencing hearing was as a matter of law insufficient to support the aggravating circumstances on which his death sentence was based, but the Double Jeopardy Clause does not require the reviewing court, if it sustains that claim, to ignore evidence in the record supporting another aggravating circumstance which the sentencer has erroneously rejected.

*Poland*, 476 U.S. at 156–157, 106 S.Ct. at 1756, 90 L.Ed.2d at 133.

The Pennsylvania death penalty statute is structured as is the Arizona statute in that aggravating circumstances are standards to guide the making of the choice: if the jury

unanimously finds at least one aggravating circumstance and no mitigating circumstances, or if the jury unanimously finds one or more. aggravating circumstances which outweigh any mitigating circumstances, then the verdict must be for the death sentence. 42 Pa.C.S. § 9711(c)(1)(iv). Following the reasoning of *Poland*, it is not the finding of the presence or absence of an aggravating circumstance that is dispositive of whether the defendant will receive the death sentence, but rather it is the ultimate conclusion reached after the factfinder weighs all the factors found, both aggravating and mitigating. Put simply, if the factfinder in the first trial imposes the death penalty, double jeopardy never attaches, and the prosecution may seek the death penalty in a second trial based upon any of the statutory grounds it finds relevant, regardless of whether they were found or not found in the first trial.

In this case, the sentencing jury in the first trial returned a verdict of the death sentence. Therefore, under *Poland*, no matter what aggravating factors that jury considered, so long as they found that the presence of one or more factors weighed with other circumstances warranted the death penalty, the prosecution is not precluded from seeking to prove any specific aggravating factors and is clearly not precluded from again seeking the death penalty.

■ Next we address the legal question of whether 42 Pa.C.S. § 9711(d)(2) contemplates the situation in which the victim was not the person whom the defendant had contracted to kill. Gibbs submits that the aggravating circumstance statute must be construed narrowly. The Commonwealth argues that the statute applies to the killing of another in the course of carrying out a contract killing, and that, in any event, Gibbs contracted to kill both men. On this appeal we do not review the sufficiency of the evidence to support an aggravating circumstance, as the Supreme Court must do when reviewing appeals from sentences of death, nor do we have the record that would enable us to make a sufficiency determination. Therefore, we do not address the Commonwealth's point that Gibbs actually did

contract to kill both men. We interpret the certified question before us to be purely one of statutory interpretation. The aggravating circumstance in question is as follows:

> (2) The defendant paid or was paid by another person or had contracted to pay or be paid by another person or had conspired to pay or be paid by another person for the killing of the victim.

42 Pa.C.S. § 9711. Neither the parties nor the trial court advances any case authority regarding whether 9711(d)(2) can apply to unintended victims, nor do we find any. This seems to be a question of first impression.

In support of its position the Commonwealth relies upon *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied, Zettlemoyer v. Pennsylvania*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 3127 (1983), by way of analogy. In *Zettlemoyer* the defendant argued that the Commonwealth failed to prove the aggravating circumstance of: victim was a prosecution witness to a murder committed by the defendant and was killed for the purpose of preventing his testimony, 9711(d)(5). He argued that the Commonwealth failed to prove his motive for killing the witness beyond a reasonable doubt and that the Commonwealth failed to prove that he committed the antecedent murder. Reviewing sufficiency, and finding ample support for these findings in the record, the court rejected defendant's arguments. Nothing in the *Zettlemoyer* opinion supports the Commonwealth's suggestion that, to satisfy the aggravating circumstance at issue, the victim in our case need not be the subject of the murder contract.

The plain language of the contract killing aggravating circumstance statute at issue in this case precludes an unintended victim. We reject the Commonwealth's interpretation of the statutory language, that its gravamen is that a contract to kill was made. It may be true that Gibbs contracted to kill somebody, but the aggravating circumstance at issue is not simply that the defendant contracted to kill in the abstract. He must have "been paid by another ... for the killing of the victim." The Commonwealth

suggests, and the trial court expressly found, that a "transferred intent" theory brings the killing at issue here within the meaning of the statutory aggravating circumstance. At common law, if the specific intent to commit murder of a particular individual exists, this intent can be transferred for the purpose of finding the elements of murder, even if the actual victim is not the intended victim. *See Commonwealth v. Bolish,* 381 Pa. 500, 113 A.2d 464 (1955).

We will not judicially broaden a clearly drafted statute to include application of common law transferred intent theory, the purpose of which is to establish the elements of a crime. The aggravating circumstances are legislatively created. They are not crimes in themselves but rather are standards to guide the making of the choice between death and life imprisonment. *Poland v. Arizona,* 476 U.S. at 155–156, 106 S.Ct. at 1755, 90 L.Ed.2d at 132. It is entirely inappropriate for this court to augment the finding of a legislatively-created aggravating circumstance that can result in a sentence of death with a common law theory designed to establish intent for a crime. This situation presents the clearest reason to follow the statutory directive to construe strictly any criminal statute. 1 Pa.C.S. § 1928. It is up to the legislature, if they so choose, and not to the courts, to affirmatively incorporate the "transferred intent" concept into this aggravating circumstance by way of express language. We conclude that the Commonwealth may seek the contract killing aggravating circumstance only if Gibbs contracted to kill the victim.

■ Last, Gibbs argues that the security guard victim was not a "peace officer" within the meaning of § 9711(d)(1) ("The victim was a ... peace officer ...") because he was employed as a security guard at a private housing development. Gibbs contends that this statutory aggravating circumstance applies only to one "who by virtue of his office or public employment is vested by law with a duty to maintain public order or to make arrests ..." 18 Pa.C.S. § 501, definition of "peace officer," and that a private security guard does not fall under this definition.

Gibbs' argument fails. The victim was appointed as a night watchman by the Court of Common Pleas of Pike County pursuant to the Night Watchmen's Act, 53 P.S. § 3704:

It shall be lawful for any number of persons owning or occupying real estate in any city, borough or township of this commonwealth, upon application to and with the approval of the court of quarter sessions of the proper county, to employ a night watchman or night watchmen for the purpose of protecting their premises and property in the night-time and all persons so appointed, with the approval aforesaid, as night watchman shall have, exercise and enjoy all the rights, powers and privileges, now vested by law in constables or police officers duly elected or appointed in said cities or boroughs....

53 P.S. § 3704. The victim was empowered by the court and was acting in the capacity of a "peace officer." Opinion of the Honorable Harold A. Thomson, Jr., March 21, 1990 at 4. We conclude that the Commonwealth may seek the aggravating circumstance of killing a peace officer.

To summarize, we find no double jeopardy violation in the Commonwealth's seeking to prove aggravating circumstances not found by the sentencing jury in the first trial. We find that, as a matter of law, the "contract killing" aggravating circumstance cannot be transferred to an unintended victim, but that, as a matter of law, the "killing of a peace officer" aggravating circumstance does apply to the killing of a private security guard duly empowered by the Court of Common Pleas under the Night Watchmen's Act. Hence, we reverse that portion of the Order of March 21, 1990 allowing the Commonwealth to seek to prove the "contract killing" aggravating circumstance by way of a transferred intent theory. We affirm all other portions of the order.

Order affirmed in part, reversed in part. Case remanded. Jurisdiction relinquished.