626 A.2d 133

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Barry GIBBS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1992.

Decided June 1, 1993.

Reargument Denied July 20, 1993.

D. Benjamin Van Steenburgh, III, Public Defender, Thomas Earl Mincer, Michael P. Gough, Asst. Public Defender, for Gibbs.

Ernest D. Preate, Jr., Atty. Gen., Andrea F. McKenna, Deputy Atty. Gen., Robert A. Graci, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from an order of the Superior Court affirming the denial by the Court of Common Pleas of Pike County of a petition of appellant, Barry Gibbs, to preclude the Commonwealth from seeking the death penalty at his second trial based on certain statutory aggravating circumstances listed in 42 Pa.C.S. § 9711(d), 403 Pa.Super. 27, 588 A.2d 13.

Gibbs was solicited by the wife of a housing development security guard to kill her husband. It is not clear whether Gibbs also agreed to kill another guard, who was the ultimate and only victim. The wife promised Gibbs, then eighteen years of age, money, a leather jacket, and a motorcycle or boat in exchange for his services. On the night of March 27, 1984, Gibbs accepted the offer. Accompanied by the wife and three others, he found the husband and the other guard in the housing development security office. Gibbs fired a shot, missing the husband but killing the other man.

On December 14, 1984, a jury convicted Gibbs of first degree murder, criminal attempt to commit homicide, criminal conspiracy to commit homicide, and aggravated assault. At the sentencing stage of the trial, the court instructed the jury on all statutory aggravating circumstances as set forth in 42 Pa.C.S. § 9711(d). The jury found as aggravating circumstances the following: peace officer; contract for pay; and, premeditated: lethal weapon. Having determined that the aggravating circumstances of the crime outweighed the mitigating circumstances, the jury returned a verdict of a sentence of death, pursuant to 42 Pa.C.S. § 9711(c)(1)(iv).

Gibbs appealed his judgment of sentence directly to this Court pursuant to 42 Pa.C.S. § 9711(h). This Court found that his confession was involuntarily given, and vacated the judgment of sentence and remanded for a new trial. *Commonwealth v. Gibbs*, 520 Pa. 151, 553 A.2d 409, *cert. denied*, 493 U.S. 963, 110 S.Ct. 403, 107 L.Ed.2d 369 (1989).

At the commencement of the second trial on February 15, 1990, the Commonwealth filed a notice in which it stated its intention to seek a sentence of death based on the following aggravating circumstances: peace officer; contract killing; and grave risk of death.[1] On March 16, 1990, the Commonwealth filed a motion seeking to add an additional aggravating circumstance, that of killing while in perpetration of a felony.[2]

Gibbs filed an omnibus pre-trial motion in which he moved to preclude the death penalty based on insufficient evidence as to the Commonwealth's original three grounds at the prior trial. He also filed a motion in opposition to the Common-

1. 42 Pa.C.S. § 9711(d)(1), (2) and (7) provide, in pertinent part as follows:
   1) The victim was a ... peace officer ... who was killed in the performance of his duties.
   2) The defendant ... was paid by another person or had contracted to ... be paid by another person or had conspired to ... be paid by another person for the killing of the victim.
   7) In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense.

2. 42 Pa.C.S. § 9711(d)(6) provides as follows: The defendant committed a killing while in the perpetration of a felony.

wealth's notice that it would seek the death penalty based partly upon the "grave risk of death to another" factor. The trial court denied Gibbs's motions and granted the Commonwealth's request to add "killing while in the perpetration of a felony" as an aggravating circumstance.

Gibbs filed a petition for review and for permission to appeal[3] and the Commonwealth then filed a motion to quash the direct appeal. The Superior Court granted Gibbs's petition and denied the Commonwealth's motion to quash, thereby determining that the order in question met the requirements for appealability. The court ruled that Gibbs's double jeopardy right was not violated by the Commonwealth's attempt to seek the death penalty on the basis of "killing while in the perpetration of a felony," and "grave risk of death to another," even though those aggravating factors were presented to, but not found by, the jury in the first trial. Also, it ruled that the trial court correctly held that the murder victim (a night watchman appointed by the Court of Common Pleas pursuant to 53 P.S. § 3704) was a "peace officer" for purposes of 42 Pa.C.S. § 9711(d)(1). It ruled, however, that the trial court erred in determining that the common law principle of transferred intent is applicable with respect to finding a "contract killing" an aggravating circumstance when the victim is not the person the killer was hired to kill. This appeal followed.

■ Gibbs argues that the Commonwealth should be precluded from seeking the death penalty on the basis of "killing while in the perpetration of a felony" and "grave risk of death to another" because both aggravating factors were argued but not found by the jury in the first trial. He grounds his claim on double jeopardy principles, asserting that by not finding the two statutory aggravating factors, the sentencing jury in the first trial "acquitted" him of these factors. Therefore, Gibbs claims, by submitting these grounds at the second trial,

3. On March 27, 1990, the trial court, in response to appellant's petition, issued an order pursuant to 42 Pa.C.S. § 702(b) certifying that its March 21 order involved controlling questions of law and that an appeal would materially advance the ultimate termination of the matter. It did not find that the double jeopardy claims raised by appellant were frivolous.

the Commonwealth violated his constitutional right not to be twice put in jeopardy.

This issue of whether a sentencer's rejection of an aggravating circumstance raises a double jeopardy bar to the consideration of that circumstance by another jury on retrial was considered and rejected by the United States Supreme Court in *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986).[4] The Supreme Court emphasized that:

> Aggravating circumstances are not separate penalties or offenses, but are "standards to guide the making of [the] choice" between the alternative verdicts of death and life imprisonment. . . . [T]he judge's finding of any particular aggravating circumstance does not of itself "convict" a defendant (i.e. require the death penalty), and the failure to find any particular aggravating circumstance does not "acquit" a defendant (i.e., preclude the death penalty).

4. In *Poland*, a jury convicted the defendants (brothers) of first-degree murder. Pursuant to the then-effective Arizona capital sentencing statute, the trial judge, sitting as finder of fact, found the aggravating circumstance of "crime committed in especially heinous manner" was present and that the aggravating circumstance of "pecuniary gain" was not present. On appeal, the Arizona Supreme Court vacated the conviction. It held that the evidence was insufficient to support the "especially heinous" circumstance and the trial court erred in finding that the circumstance of "pecuniary gain" was not present, suggesting that it could be found in the future.

Following the conviction of defendants at the second trial, the prosecution argued the circumstances of "especially heinous" and of "pecuniary gain." It also presented a circumstance not argued at the first trial, i.e., "previous conviction of a felony involving the threat or use of violence to another person." The trial judge found all three present and again sentenced the defendants to death. The Arizona Supreme Court rejected the defendants' argument that the court's previous determination that the evidence failed to support the "especially heinous" aggravating circumstance barred reimposition of the death penalty since its holding was not tantamount to a death penalty acquittal. The court then again found the evidence insufficient to support "especially heinous" but sufficient to support "pecuniary gain" for both brothers and found the "prior conviction" ground for one brother.

The United States Supreme Court affirmed, ruling that the reimposition of the death penalty did not violate the double jeopardy clause because the Arizona Supreme Court did not "acquit" the brothers of the death penalty by finding the evidence insufficient to support the sole aggravating circumstances found by the sentencer, i.e., "especially heinous manner."

*Poland v. Arizona,* 476 U.S. at 156, 106 S.Ct. at 1755, 90 L.Ed.2d at 132–33.

The Pennsylvania death penalty statute is structured like the Arizona statute in that aggravating circumstances are standards to guide the making of the choice: if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstances, or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances, then the verdict must be for the death sentence. 42 Pa.C.S. § 9711(c)(1)(iv). Following the reasoning of *Poland,* it is not the finding of the presence or absence of an aggravating circumstance that is dispositive of whether the defendant will receive the death penalty, but rather it is the ultimate conclusion reached after the factfinder weighs all the factors found, both aggravating and mitigating. Concluding, when a jury has imposed a death penalty in a first trial, double jeopardy does not attach no matter what aggravating circumstances were found by the jury in the first trial or what aggravating circumstances are presented to the jury in the second trial.

In Gibbs's case, the sentencing jury in the first trial returned a verdict of the death sentence. The Superior Court correctly concluded that no matter what aggravating factors that the jury considered, so long as the jury found that the presence of one or more factors weighed against other circumstances warranted the death penalty, the prosecution here is not precluded from seeking to prove any specific aggravating factors and clearly is not precluded from again seeking the death penalty.

[2] Gibbs next argues that the Superior Court erred in concluding that the murder victim was a "peace officer" for purposes of 42 Pa.C.S. § 9711(d)(1). 42 Pa.C.S. § 9711(d)(1) provides, in pertinent part, as follows: "The victim was a ... peace officer ... who was killed in the performance of his duties." Gibbs argues that the security guard-victim was not a peace officer because section 9711(d)(1) applies only to one who falls within the definition of "peace officer" under 18

Pa.C.S. § 501, and the victim does not fall under this definition because he was employed as a security guard at a private housing development.

The victim here was a "peace officer" within the meaning of 42 Pa.C.S. § 9711(d)(1) because he was appointed as a night watchman by the Court of Common Pleas of Pike County pursuant to the Night Watchman's Act, 53 P.S. § 3704. 18 Pa.C.S. § 501 defines a "peace officer" as one who "by virtue of his office or public employment is vested by law with a duty to maintain public order or to make arrests...." The Night Watchman's Act, 53 P.S. § 3704, provides as follows:

It shall be lawful for any number of persons owning or occupying real estate in any city, borough or township of this commonwealth, upon application to and with the approval of the court of quarter sessions of the proper county, to employ a night watchman or night watchmen for the purpose of protecting their premises and property in the night-time and all persons so appointed, with the approval aforesaid, as night watchman shall have, exercise and enjoy all the rights, powers and privileges, now vested by law in constables or police officers duly elected or appointed in said cities or boroughs....

According to the relevant statutes, when a security guard is properly empowered by the court of common pleas as a "night watchman," he is acting in the capacity of a "police officer" when performing his duties. Since a "police officer" is a "peace officer" within the meaning of 18 Pa.C.S. § 501, one acting in the capacity of a "police officer" (i.e., a properly empowered night watchman) is a "peace officer" for purposes of 42 Pa.C.S. § 9711(d)(1). *See Commonwealth v. Beasley,* 504 Pa. 485, 475 A.2d 730 (1984) (murder of a police officer in the performance of his duties comes within the meaning of 42 Pa.C.S. § 9711(d)(1)). Here, the Superior Court did not err in concluding that since the security guard-victim was properly empowered by the Court of Common Pleas of Pike County as a "night watchman," he was acting in the capacity of a "peace officer" at the time of his death for purposes of 42 Pa.C.S. § 9711(d)(1).

■ Finally, the Commonwealth, in its cross-petition, argues that, in the prosecution of a death penalty case, the aggravating circumstance of contract killing may properly be considered by the jury when the victim killed was not the object of the contract to kill. The Commonwealth argues that the statute applies to the killing of another in the course of carrying out a contract killing and that, in any event, Gibbs contracted to kill both men. Since the issue presented here is not one of sufficiency of the evidence, it is not appropriate to address the Commonwealth's contention that Gibbs actually contracted to kill both men. This opinion is confined solely to the question of statutory interpretation of 42 Pa.C.S. § 9711(d)(2).

The critical question is whether the statute includes an unintended victim. 42 Pa.C.S. § 9711(d)(2) provides: "The defendant paid or was paid by another person or had contracted to pay or be paid by another person or had conspired to pay or be paid by another person for the *killing of the victim*." (emphasis added). This is a question of first impression.

The plain language of the statute does not include an unintended victim. Rather, the clear language requires that the defendant was to be paid to kill the victim. The word "victim" clearly and logically means the person who was killed. If the General Assembly had meant this aggravating circumstance to apply in every contract killing no matter who was killed, it would have chosen other language.

The Commonwealth suggests that the General Assembly did not intend, under this section, to subject to the death penalty only killings fulfilling "contracts to kill." It argues that the gravamen of § 9711(d)(2) is that a contract to kill was made, and that the section applies regardless of who is killed. The language of the statute, however, is expressly limited to the victim of the contract.

■ The Commonwealth argues, and the trial court expressly found, that the common law "transferred intent" theory brings the killing here within the meaning of 42 Pa.C.S. § 9711(d)(2). The "transferred intent" theory provides that if

the intent to commit a crime exists, this intent can be transferred for the purpose of finding the intent element for another crime. *See Commonwealth ex rel. McCant v. Rundle*, 418 Pa. 394, 395–96, 211 A.2d 460, 461–62 (1965) (intent to commit murder of one individual "transferred" where the actual victim was not the intended victim.)

Notwithstanding this argument, the "transferred intent" theory has no application to the legislatively created aggravating circumstances. The purpose of the "transferred intent" theory is to establish the intent element for the crime of murder. On the other hand, aggravating circumstances are not crimes in themselves but are "standards to guide the making of [the] choice" between death and life imprisonment. *Poland v. Arizona*, 476 U.S. at 156, 106 S.Ct. at 1755, 90 L.Ed.2d at 132. To accept the Commonwealth's position that the "transferred intent" doctrine modifies the literal language of 42 Pa.C.S. § 9711(d)(2) would require this Court to rewrite a legislatively-created aggravating circumstance, which this Court is without power to do.[5] It is for the General Assembly, if it so chooses, but not this Court, to incorporate the "transferred intent" concept into the express language of this aggravating circumstance. Hence, the Superior Court correctly concluded that the Commonwealth may seek the contract killing aggravating circumstance only if Gibbs contracted to kill the victim.

The order of the Superior Court is affirmed and the matter is remanded to the trial court.

LARSEN, J., did not participate in the consideration or decision of this case.

---

**5.** This Court is also mindful of the statutory directive to construe strictly any criminal statute. 1 Pa.C.S. § 1928.