J-S07003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TYREE J. WATSON, | |
| Appellant | No. 478 EDA 2017 |

Appeal from the Judgment of Sentence Entered January 5, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002444-2012

BEFORE:  BENDER, P.J.E. , PANELLA, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:              **FILED MAY 11, 2018**

Appellant, Tyree Watson, appeals from the judgment of sentence of an aggregate term of 9 to 18 years' incarceration, followed by four years' probation, imposed after he was convicted by a jury of, *inter alia*, two counts each of attempted murder and aggravated assault.  Appellant argues that the evidence was insufficient to sustain his convictions, and that the jury's verdict was contrary to the weight of the evidence.  We affirm.

Briefly, Appellant was arrested based on evidence that he shot at an unidentified male ("John Doe") on a public street in Philadelphia, with one of his errant bullets striking an innocent bystander, Charles Gilbert.  Gilbert suffered paralysis of his left arm from the bullet that entered his neck/collarbone area.  Appellant was charged with attempted murder and aggravated assault regarding both John Doe and Gilbert, as well as single

counts of carrying a firearm without a license, carrying a firearm on a public street in Philadelphia, and possession of an instrument of crime. He proceeded to a jury trial in September of 2016. On September 13, 2016, the jury reached a verdict, finding Appellant guilty of the above-stated crimes.

On January 5, 2017, the trial court sentenced Appellant to the aggregate term stated, *supra*. He filed a timely, post-sentence motion that was denied on January 17, 2017. Appellant filed a timely notice of appeal, and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On June 27, 2017, the trial court issued a Rule 1925(a) opinion.

Herein, Appellant presents the following four issues for our review:

[I.] Is the evidence sufficient[,] as a matter of law[,] to support the conviction for criminal aggravated assault as set forth in 18 Pa.C.S.[] § 2702(a)[,] graded as a felony of the first degree with respect to complainant John Doe or complainant Charles Gilbert?

[II.] Is the evidence sufficient[,] as a matter of law[,] to support the conviction for criminal attempted murder with respect to complainant John Doe or complainant Charles Gilbert?

[III.] Is the verdict of guilty with respect to the charge of aggravated assault as set forth in 18 Pa.C.S.[] § 2702(a), graded as a felony of the first degree, against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice with respect to complainant John Doe or complainant Charles Gilbert?

[IV.] Is the verdict of guilty with respect to the charge of attempted murder against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice with respect to complainant John Doe or complainant Charles Gilbert?

Appellant's Brief at 7-8.

We have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed the thorough and well-reasoned opinion of the Honorable Giovanni O. Campbell of the Court of Common Pleas of Philadelphia County, dated June 27, 2017. We conclude that Judge Campbell's opinion accurately disposes of the issues presented by Appellant. Accordingly, we adopt his opinion as our own and affirm Appellant's judgment of sentence on the grounds set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/18

IN THE COURT OF COMMON PLEAS
FOR THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL

COMMONWEALTH OF PA : CP-51-CR-0002444-2012

v.

TYREE WATSON

CP-51-CR-0002444-2012 Comm v Watson, Tyree J
Opinion

7967802351

**Received**

JUN 2 7 2017

Office of ..... .i records
Appeals/Post Trial

## MEMORANDUM OPINION

*CAMPBELL, J.*                                                      June 27TH, 2017

### Procedural History

On September 7, 2016, Appellant Tyree Watson proceeded to trial before this Court, sitting with a jury. On September 13, 2016, the jury returned a verdict of guilty on two counts of attempted murder, two counts of aggravated assault, carrying a firearm without a license, carrying a firearm in Philadelphia and possession of an instrument of a crime.

A motion for judgment of acquittal was filed on January 3, 2017, and denied on January 5, 2017.

Also on January 5, 2017, Appellant was sentenced to 9-18 years incarceration on each count of attempted murder, to run concurrently, and four years of probation on the two firearms charges and possession of an instrument of crime, with the probationary sentences to run concurrent to one another and consecutive to the sentence of incarceration. The aggravated assault convictions merged with the attempted murder convictions for purposes of sentencing.

Post-sentence motions were filed on January 9, 2017, and denied on January 17, 2017.

A premature Notice of Appeal was filed on January 13, 2017.

Pursuant to Pa.R.A.P. 1925(b)(2) and (3), the Court entered an order on January 23, 2017, directing the filing of a Statement of Errors Complained of on Appeal, not later than twenty-one (21) days after entry of the order.

A new notice of appeal was filed on January 25, 2017.

An amended order pursuant to Pa.R.A.P. 1925(b)(2) and (3), was entered an order on March 2, 2017.

A Statement of Errors Complained of on Appeal was filed on March 23, 2017.

**Factual History**

On the afternoon of September 28, 2011, Appellant, as seen on a store security video, was walking west on West Butler Street, at the corner of Pulaski Avenue and Butler, heading in the direction of 18th Street. Appellant was wearing a dark t-shirt and jeans. He had a blue backpack and was carrying an iPad. N.T. 9/7/16, pp. 62-64; C-33a-d, C-5. As Appellant walked toward the intersection of 18th and Butler Streets another security video camera captured Appellant passing an unknown man walking in the opposite direction, then stopping to look at that man before removing his backpack and putting it on the steps of the Roman Grocery store, along with the iPad. N.T. 9/7/16, pp. 63-66, 121; C-33e-h; C-5. Appellant removed a gun from the backpack, then headed east on Butler Street, the way he had just come and the direction in which the man in the white t-shirt was heading. N.T. 9/7/16, pp. 91, N.T. 9/8/16, pp. 21-22, 24, 44, 50-51, 70-71, 75-77; C-5, C-33h.

At the corner of Pulaski and Butler, the camera which first picked up Appellant, caught the man in the white t-shirt running east on Butler with a gun in his hand, then turning left (north) on Pulaski, disappearing down that street.[1] N.T. 9/7/16, pp. 65-66; C-33i-j. As the man in the white t-shirt ran down Pulaski, away from the intersection with Butler, Charles Gilbert, an innocent

[1] Pulaski Avenue intersects West Butler Street on a diagonal, and actually runs generally northwest from Butler, intersecting North 18th Streets, and southeast from Butler toward North 17th Street. C-1, C-1a. Butler at Pulaski, is a one-way street, running east. C-1, C4a.

2

bystander who was standing in front of 1703 West Butler on the across Pulaski on the northeast corner of Butler and Pulaski, between 17th and Pulaski, was struck in the neck/collarbone by a bullet. N.T. 9/7/16, pp. 54-55, 68, 114, 164, 172; C-1a, C-2, C-4a, C-4a, C-5. Mr. Gilbert saw the man in the white t-shirt running toward him holding a gun but not firing. The man running behind the man in the white t-shirt fired his gun and Gilbert was struck. N.T. 9/7/16, pp. 159-160, 177-181, N.T. 9/8/16, pp. 96-98; C-7.

Gilbert was struck in the lower left neck with the bullet trajectory extending through the clavicle, fracturing the mid-clavicle, with one bullet fragment lodging near the vertebral spine. As a result of the gunshot would he suffered paralysis of his left arm. The projectile was still in his body at the time of trial. N.T. 9/7/16, pp 153-155, N.T. 9/8/16, pp. 123-124.

Under a minute later, the Roman Grocery camera back at 18th and Butler captures Appellant returning from the direction of Butler and Pulaski where Gilbert was shot, placing an object back in the backpack, then picking up his backpack and iPad, before walking into the street and off camera. N.T. 9/7/16, pp. 88; C-5.

A minute or two after the Mr. Gilbert was shot, a light Blue Mercury Grand Marquis was captured on the first camera as it turned from Butler onto Pulaski, heading north in the same direction as the man in the white t-shirt. N.T. 9/8/16, pp. 36-37, N.T. 9/8/16, pp. 120-119; C-5. Subsequently, during the course of the police investigation of the scene, the light blue Mercury Grand Marquis, was found about one block south of the scene of the shooting. N.T. 9/7/16, pp. 94-97, N.T. 9/8/16, p. 32, 54; C-10b-d. Visible inside the car was a blue backpack like the one Appellant was seen with in the videos, and an iPad. C-10d. The car was impounded and later searched. The iPad was found to have photos of Appellant as its lock-screen and home-screen

3

images. N.T. 9/8/16, pp. 111-113; C-22. The car was owned by Bryan Seals, who was a long time neighborhood and school friend of Appellant's, who was seen walking in the vicinity of 18th and Butler after the shooting, while police were on the scene. N.T. 9/8/16, pp. 52-53. Police staked out the car after the shooting and at some point they saw Seals and Nafeese Moore enter the car. N.T. 9/8/16, pp. 28-31, 33. Police approached the men, and upon observing the blue backpack in the rear seat, secured the car for detectives. N.T. 9/8/16, p. 31.

Officers Harley, Coulter, Wright and Graves, testified that they knew Appellant from working at Gratz High School where Appellant attended and played sports, from being assigned as a patrol officer in the neighborhood where Appellant lived and from being assigned as a narcotics unit surveillance officer in that neighborhood, respectively. N.T. 9/7/16, pp. 127-130, N.T. 9/8/16, pp. 15-17, 47-48, 65-68. Each officer testified that they responded to the scene following the shooting, viewed some the video inside the store, and were immediately able to identify Appellant as the person with the backpack and iPad. N.T. 9/7/16, pp. 131-140, 144, N.T. 9/8/16, pp. 21-27, 50-51, 55-57, 69-72, 74; C-16,

## Discussion

Appellant asserts the following allegations of error: 1) The evidence was insufficient to support the convictions for attempted murder and aggravated assault; 2) the verdicts of guilty on the charges of attempted murder and aggravated assault were against the weight of the evidence.

**A.      The evidence was sufficient to support the convictions for attempted murder, and aggravated assault.**

A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt."

4

*Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.*

> Our Supreme Court has instructed:
>
> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

*Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa. Super. 2013).

Moreover, a conviction may stand on circumstantial evidence. *Commonwealth v. Roscioli*, 309 A.2d 396, 398 (1973) ("Although the Commonwealth does not have to establish guilt to a mathematical certainty, and may in the proper case rely wholly on circumstantial evidence, the conviction must be based on more than mere suspicion or conjecture."); *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa. Super. 2005) ("[T]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1038-39 (Pa. Super. 2002)).

1. <u>The evidence was sufficient to find appellant guilty of each count of attempted murder.</u>

   (a) *The evidence demonstrated specific intent to commit murder.*

5

Specific intent to kill can be inferred "from the manner in which the homicide was committed, such as, multiple gunshot wounds." *Commonwealth v. Hughes*, 865 A.2d 761, 793 (Pa. 2004). Specific intent to kill may also be inferred from a defendant's use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Robertson*, 874 A.2d 1200, 1207 (Pa. Super. 2005).

In order to sustain a conviction for attempted murder the Commonwealth must prove:

> Under the Crimes Code, "[a] person commits an attempt when[,] with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of the crime." 18 Pa.C.S.A. § 901(a). A person may be convicted of attempted murder if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act. The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done[,] and does not any longer focus on the acts remaining to be done before the actual commission of the crime. The mens rea required for first-degree murder, specific intent to kill, may be established solely from circumstantial evidence. The law permits the fact[-]finder to infer that one intends the natural and probable consequences of his acts[.]

*Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa. Super. 2008) (quotation marks and some citations omitted). In the context of a sufficiency of the evidence claim concerning attempted murder:

> [I]ntent is a subjective frame of mind, it is of necessity difficult of direct proof. We must look to all the evidence to establish intent, including, but not limited to, [the] appellant's conduct as it appeared to his eyes. ... Moreover, depending on the circumstances[,] even a single punch may be sufficient.

*Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2008) (citation and brackets omitted); "Specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another." *Commonwealth v. Stokes*, 78 A.3d 644, 650 (Pa. Super. 2013) (citation omitted).

6

Here, the evidence, read in the light most favorable to the Commonwealth as verdict winner, demonstrated that Appellant saw the man in the white t-shirt walk past him, then made a conscious decision to try to kill him. Appellant stopped, put down his bag and iPad, retrieved a gun and gave chase, firing at least two shots at the fleeing man. *See e.g. Commonwealth v. Rogers*, 2016 Phila. Ct. Com. Pl. LEXIS 516, *18 (Pa. C.P. 2016, Ransom, J.) ("Specific intent to kill can be reasonably inferred from the actions taken by the Appellant in leaving the scene of the argument, returning with a gun, shooting at [the victim] multiple times, and ultimately striking him in the chest.").

In affirming an attempted murder conviction of one Thomas White, who pointed a handgun and fired in the direction of several neighbors, the Superior Court quoted the apt 1793 observation of the Supreme Court of New Jersey:

> The designs of the heart can rarely be proved in a direct manner by the testimony of witnesses. When a man designs to perpetrate a scheme of wickedness, he seldom communicates his intention unless to an accomplice; hence the intent must in most cases be collected from the circumstances. These may sometimes prove deceptive; but when, without any forced construction, they speak the intention in a language clear and intelligible, they may be relied on as the best evidence which the nature of the case will admit of.
>
> It is impossible to lay down any general rule, or to declare from what circumstances particular intentions are to be inferred. No two cases are exactly similar . . . .

*Commonwealth v. White*, 323 A.2d 757, 759 (Pa. Super. 1974), quoting *State v. Wilson*, 1 American Decisions, 216, 217, 219 N.J. 1793).

The conduct of Appellant also provides the requisite intent for an attempted murder against Charles Gilbert. The transferred intent doctrine is codified in 18 Pa. C.S.A. § 303 and reads in relevant part as follows:

§ 303. Causal relationship between conduct and result

7

\* \* \*

(b) Divergence between result designed or contemplated and actual result. — When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:

(1) the actual result differs from that designed or contemplated as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused;

18 Pa.C.S.A. § 303(b).

The Supreme Court has explained:

"The transferred intent theory provides that if the intent to commit a crime exists, this intent can be transferred for the purpose of finding the intent element of another crime." *Commonwealth v. Gibbs*, 533 Pa. 539, 547, 626 A.2d 133, 138 (1993). The evidence here demonstrated that appellant shot in the direction of Forbes even though he may have only intended to shoot Aitken. This evidence was sufficient to warrant the transferred intent instruction. Where the evidence is sufficient to support an instruction, a new trial is not warranted. Hence, this claim warrants no relief.

*Commonwealth v. Thompson*, 739 A.2d 1023, 1029-1030 (Pa. 1999).

Here, the jury was entitled to transfer Appellant's intent to kill Burch for the purpose of finding the requisite mens rea for the attempted murder of Devine. See *Commonwealth v. Jackson*, 2008 PA Super 192, 955 A.2d 441, 450 (Pa. Super. 2008) (when evidence established that defendant specifically intended to murder one person, intent to commit aggravated assault was transferred to multiple bystanders endangered by bullets). Accordingly, sufficient evidence supports Appellant's conviction of attempted murder.

*Commonwealth v. Leach*, 2014 Pa. Super. Unpub. LEXIS 2705, *13-14 (Pa. Super. Aug. 15, 2014)

Here, it matters not that Appellant intended to kill the man in the white t-shirt, but instead struck Charles Gilbert. Appellant does not get a free pass because he is a poor shot. His intent is deemed transferred, resulting in culpability for both the attempted murder of the unknown man in the white t-shirt and Charles Gilbert, the innocent bystander who was left partially paralyzed by Appellant's errant bullet.

8

2.   The evidence was sufficient to find appellant guilty of each count of aggravated assault where the evidence established that Appellant intended to inflict serious bodily injury and did so knowingly and recklessly.

The Crimes Code defines the offense of Aggravated Assault 18 Pa. C.S. § 2702(a)), in pertinent part:

§ 2702. Aggravated assault.

(a) Offense defined.--A person is guilty of aggravated assault if he:
(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

There is no question that Appellant caused serious bodily injury to Charles Gilbert. Despite a layman's debate over whether Gilbert was shot in the neck or the shoulder, the medical records, which were entered by stipulation, establish that Gilbert was struck in the lower left neck with the bullet trajectory extending through the clavicle, fracturing the mid-clavicle, with one bullet fragment lodging near the vertebral spine. As a result of the gunshot wound, he suffered paralysis of his left arm. The projectile was still in his body at the time of trial. N.T. 9/7/16, pp 153-155, N.T. 9/8/16, pp. 123-124.

As to the man in the white t-shirt, Appellant's actions in chasing him down the street firing shots at his fleeing back demonstrates an attempt to cause serious bodily injury.

[E]vidence that Appellant intended to cause serious bodily injury to Devine was not necessary. The jury could properly find that when Appellant fired a number of shots at close range while Devine was sitting on the steps next to Burch, he took a substantial step toward causing serious bodily injury

Commonwealth v. Leach, 2014 Pa. Super. Unpub. LEXIS 2705, *16 (Pa. Super. Aug. 15, 2014)

As discussed in the previous section, this intent transfers to Charles Gilbert for the purposes of demonstrating an attempt to cause serious bodily injury. Moreover, as to Gilbert, the evidence,

9

including his firing shots at the man in the white t-shirt, where Gilbert was in the line of fire, establishes that Appellant caused serious bodily injury recklessly under circumstances manifesting and extreme indifference to the value of human life.

> A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). "For the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue." *Commonwealth v. O'Hanlon*, 539 Pa. 478, 482, 653 A.2d 616, 618 (1995). Here, the evidence established that the first several shots fired by appellant narrowly missed hitting Forbes. Forbes testified that initially he believed he had been struck by one of appellant's bullets and was then forced to run and "zig zag" in order to avoid being hit by the bullets. We find that this evidence was sufficient to support the aggravated assault and recklessly endangering another person convictions.

*Commonwealth v. Thompson*, 739 A.2d 1023, 1028-1029 (Pa. 1999). *See also Commonwealth v. Jackson*, 955 A.2d 441, 450 (Pa. Super. 2008) (when evidence established that defendant specifically intended to murder one person, intent to commit aggravated assault was transferred to multiple bystanders endangered by bullets)

The evidence was clearly sufficient to prove the elements of aggravated assault, beyond a reasonable doubt as to both the man in the white t-shirt and Charles Gilbert.

**B.    The verdicts were not against the weight of the evidence.**

Appellant asserts that the verdicts were against the weight of the evidence.

The Supreme Court has explained:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. *Commonwealth v. Whiteman*, 336 Pa. Super. 120, 485 A.2d 459 (Pa. Super. 1984). Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. *Tibbs*, 457 U.S. at 38 n. 11. [footnote omitted] An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same

10

facts would have arrived at a different conclusion. *Thompson, supra.* A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.*

*Commonwealth v. Widmer*, 560 Pa. 308, 319-320, 744 A.2d 745, 751-752 (Pa. 2000). Further:

> The decision of whether to grant a new trial on the basis of a challenge to the weight of the evidence is necessarily committed to the sound discretion of the trial court due to the court's observation of the witnesses and the evidence. *Brown*, 538 Pa. 410, 648 A.2d 1177. A trial court should award a new trial on this ground only when the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152 (Pa. 1986). A motion alleging the verdict was against the weight of the evidence should not be granted where it merely identifies contradictory evidence presented by the Commonwealth and the defendant.

*Commonwealth v. Chamberlain*, 612 Pa. 107, 133-134, 30 A.3d 381, 396 (Pa. 2011).

Whether from fear or neighborhood pressure, it was clear that Charles Gilbert was a reluctant witness. He did not want to be there. NT 9/7/16, p. 151. A warrant had to be issued for his arrest to compel his appearance. He was then taken into custody in Camden, and brought to Court. NT 9/7/16, pp. 166-167. When testifying he suffered convenient memory lapses redounding to Appellant's benefit, including admitting portions of his statement and claiming not to remember others. NT 9/7/16, pp. 157-161. Clearly the jury was skeptical of these efforts to exculpate Appellant, as was this Court.

The video tapes, the physical evidence, the events recalled by Mr. Gilbert, and Mr. Gilbert's prior signed statement to police (C-7), all combined to demonstrate conclusively that Appellant fired the shot that missed the man in the white t-shirt and struck Charles Gilbert. The defense efforts to undermine the video and other evidence, to exploit Mr. Gilbert's reluctance, and to attempt to attribute the gunshot to, variously, the man in the white t-shirt, Bryan Seals, some

11

unknown person or persons in Seals' blue Mercury Grand Marquis, Nafeese Moore, and someone who looked like Seals' father, were unavailing and did not overcome the strong evidence of guilt.

The Court's conscience was in no way shocked by the verdicts of guilty, which were not at all contrary to the overwhelming weight of the relevant credible evidence.

## Conclusion

Accordingly, for all the reasons set forth here Appellant's convictions and sentence should be affirmed.

By The Court:

_____
Campbell, J.

Commonwealth v. Tyree Watson          Case Number: CP-51-CR-2444-2012

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing upon the person(s), and in the manner indicated above, which service satisfies the requirements of Pa.R.Crim.P.114:

Defense Counsel/Party:

        James Richard Lloyd, Esquire
        1617 John F Kennedy Blvd Suite 999
        Philadelphia, PA 19103

Type of Service:      ( ) Personal  (X) First Class Mail

District Attorney:

        Hugh Burns, Esquire
        Office of the District Attorney
        Three South Penn Square
        Philadelphia, PA 19107

Type of Service      ( ) Personal (X) First Class Mail

**Dated: June 27, 2017**

*Vanessa A. Montone*

Vanessa A. Montone
Judicial Secretary to
Honorable Giovanni O. Campbell