# POLAND *v.* ARIZONA

No. 85–5023.   Argued February 24, 1986—Decided May 5, 1986*

*Together with No. 85–5024, *Poland* v. *Arizona,* also on certiorari to the same court.

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and POWELL, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. MAR-SHALL, J., filed a dissenting opinion, in which BRENNAN and BLACKMUN, JJ., joined, *post*, p. 157.

*H. K. Wilhelmsen*, by appointment of the Court, 474 U. S. 943, argued the cause for petitioner. With him on the brief was *Marc E. Hammond*.

*Gerald R. Grant*, Assistant Attorney General of Arizona, argued the cause for respondent. With him on the brief was *Robert K. Corbin*, Attorney General.

JUSTICE WHITE delivered the opinion of the Court.

The question presented is whether the Double Jeopardy Clause bars a further capital sentencing proceeding when, on appeal from a sentence of death, the reviewing court finds the evidence insufficient to support the only aggravating factor on which the sentencing judge relied, but does not find the evidence insufficient to support the death penalty.

I

In 1977 petitioners Patrick and Michael Poland, disguised as police officers, stopped a Purolator van that was making cash deliveries to various banks in northern Arizona. After removing some $281,000 in cash from the van, petitioners took the two Purolator guards to a lake and dumped them into the water in sacks weighted with rocks. Autopsies indi-

cated that the most probable cause of the guards' death was drowning, although one may have died of a heart attack. It was not possible to determine if the guards were drugged, but there was no evidence of a struggle.

The jury disbelieved petitioners' alibi defense and convicted them of first-degree murder. Pursuant to former Ariz. Rev. Stat. Ann. § 13–454(A) (Supp. 1973), the trial judge then sat as sentencer in a separate proceeding. At the hearing, the prosecution, relying on the evidence presented at trial, argued that two statutory aggravating circumstances were present: (1) that petitioners had "committed the offense as consideration for the receipt, or in expectation of the receipt, of [something] of pecuniary value," former Ariz. Rev. Stat. Ann. § 13–454(E)(5) (Supp. 1973); and (2) that petitioners had "committed the offense in an especially heinous, cruel, or depraved manner," former Ariz. Rev. Stat. § 13–454(E)(6) (Supp. 1973). The trial judge made the following finding with respect to the "pecuniary gain" aggravating circumstance:

> "The court finds the aggravating circumstance in § 13–454 E(3) [*sic*] is not present. This presumes the legislative intent was to cover a contract killing. If this presumption is inaccurate, the evidence shows the defendants received something of pecuniary value, cash in the amount of $281,000.00.
>
> "This, then, would be an aggravating circumstance." App. 15–16.

The judge found that the "especially heinous, cruel, [or] depraved" aggravating circumstance was present, stating that the murders were "shockingly evil, insensate, and marked by debasement." *Id.*, at 16. Finding that this aggravating circumstance outweighed the mitigating evidence, the judge sentenced petitioners to death. *Id.*, at 14.

On appeal, petitioners argued that the evidence was insufficient to support the judge's finding of the "especially heinous, cruel, or depraved" aggravating circumstance. They

also argued that the jury's verdict was tainted by a jury-room discussion of evidence not admitted at trial. The Arizona Supreme Court agreed that the jury's verdict was tainted, necessitating reversal and retrial. *State* v. *Poland,* 132 Ariz. 269, 283–285, 645 P. 2d 784, 798–800 (1982). The court next held that the evidence on which the State relied at the first sentencing hearing was insufficient to support a finding of the "especially heinous, cruel, or depraved" aggravating circumstance. *Id.,* at 285, 645 P. 2d, at 800. Finally, the court stated that the trial court "mistook the law when it did not find that the defendants 'committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value.'" *Ibid.* The court explained that this aggravating circumstance is not limited to situations involving contract killings, see *State* v. *Clark,* 126 Ariz. 428, 616 P. 2d 888 (1980), and added that "[u]pon retrial, if the defendants are again convicted of first degree murder, the court may find the existence of this aggravating circumstance." 132 Ariz., at 286, 645 P. 2d, at 801.

On remand, petitioners were again convicted of first-degree murder. At the sentencing hearing, the prosecution, relying on the evidence presented at the second trial and also presenting additional evidence, argued that the "pecuniary gain" and "especially heinous, cruel, or depraved" aggravating factors were present in each petitioner's case. The prosecution alleged a third aggravating circumstance in petitioner Patrick Poland's case: previous conviction of "a felony . . . involving the use or threat of violence on another person," Ariz. Rev. Stat. Ann. § 13–454(E)(2) (Supp. 1973).[1] The trial judge found all of the aggravating circumstances alleged by the prosecution, and again sentenced both petitioners to death.

---

[1] On October 5, 1981, petitioner Patrick Poland, in an unrelated case, was convicted of bank robbery and use of a dangerous weapon in a bank robbery.

Petitioners argued on appeal, as they had at their second sentencing hearing, that the Double Jeopardy Clause barred reimposition of the death penalty. Their theory was that the Arizona Supreme Court's decision on their first appeal that the evidence failed to support the "especially heinous, cruel, or depraved" aggravating circumstance amounted to an "acquittal" of the death penalty. Cf. *Bullington* v. *Missouri*, 451 U. S. 430 (1981); *Arizona* v. *Rumsey*, 467 U. S. 203 (1984). A majority of the Arizona Supreme Court rejected this argument, stating:

> "Our holding in *Poland I* . . . was simply that the death penalty could not be based solely upon [the 'especially heinous, cruel, or depraved'] aggravating circumstance because there was insufficient evidence to support it. This holding was not tantamount to a death penalty 'acquittal.'" *State* v. *Poland (Patrick)*, 144 Ariz. 388, 404, 698 P. 2d 183, 199 (1985).

Accord, *State* v. *Poland (Michael)*, 144 Ariz. 412, 698 P. 2d 207 (1985).

The court found the evidence still insufficient to support the "especially heinous, cruel, or depraved" aggravating circumstance, but sufficient to support the "pecuniary gain" aggravating circumstance with respect to both defendants and the "prior conviction involving violence" circumstance with respect to Patrick Poland. *State* v. *Poland (Patrick)*, *supra*, at 404–406, 698 P. 2d, at 199–201; accord, *State* v. *Poland (Michael)*, *supra*. After again reviewing and independently weighing the mitigating and aggravating circumstances, the court concluded that the death penalty was appropriate in each petitioner's case. We granted certiorari to consider whether reimposing the death penalties on petitioners violated the Double Jeopardy Clause. 474 U. S. 816 (1985). We hold that it did not.

## II

In *Bullington* v. *Missouri, supra,* this Court held that a defendant sentenced to life imprisonment by a capital sentencing jury is protected by the Double Jeopardy Clause against imposition of the death penalty in the event that he obtains reversal of his conviction and is retried and reconvicted. The Court recognized the usual rule to be that when a defendant obtains reversal of his conviction on appeal,

> "the original conviction has been nullified and 'the slate wiped clean.' Therefore, if the defendant is convicted again, he constitutionally may be subjected to whatever punishment is lawful, subject only to the limitation that he receive credit for time served." *Id.,* at 442 (quoting *North Carolina* v. *Pearce,* 395 U. S. 711, 721 (1969)).

However, the Court found that its prior decisions had created an exception to this rule: "[T]he 'clean slate' rationale . . . is inapplicable whenever a jury agrees or an appellate court decides that the prosecution has not proved its case." *Bullington,* 451 U. S., at 443.[2] Although it is usually "impossible to conclude that a sentence less than the statutory maximum 'constitute[s] a decision to the effect that the gov-

---

[2] Thus, a defendant charged with first-degree murder but only convicted of the lesser included offense of second-degree murder has been acquitted of the greater charge for purposes of the Double Jeopardy Clause. In the event his conviction is reversed on appeal, "a retrial on the first-degree murder charge [is] barred by the Double Jeopardy Clause, because the defendant 'was forced to run the gantlet once on that charge and the jury refused to convict him.'" *Bullington,* 451 U. S., at 443 (quoting *Green* v. *United States,* 355 U. S. 184, 190 (1957)).

Also, when a defendant's conviction is overturned on appeal on the grounds that the evidence was insufficient to convict, the Double Jeopardy Clause forbids a retrial. " 'Since we necessarily accord absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.'" *Bullington, supra,* at 442–443 (quoting *Burks* v. *United States,* 437 U. S. 1, 16 (1978)).

ernment has failed to prove its case,'" *ibid.* (quoting *Burks* v. *United States*, 437 U. S. 1, 15 (1978)), the Court found that Missouri, by "enacting a capital sentencing procedure that resembles a trial on the issue of guilt or innocence, . . . *explicitly requires* the jury to determine whether the prosecution has 'proved its case,'" *id.*, at 444 (emphasis in original).[3] Accordingly, the Court held that the jury's decision to sentence Bullington to life imprisonment after his first conviction should be treated as an "acquittal" of the death penalty under the Double Jeopardy Clause.

Recently, the Court held that the rationale of *Bullington* applies to the Arizona capital sentencing scheme at issue in this case. *Arizona* v. *Rumsey, supra.*[4] In *Rumsey,* the

---

[3] The "case" to which the Court referred in *Bullington* was the prosecution's case that the defendant deserved the death penalty. The analogy drawn was between a death sentence and a verdict of guilty, a life sentence and a verdict of innocent. The Court emphasized that the sentencer was required to make a choice between "two alternative verdicts," 451 U. S., at 438, a statement inconsistent with the view that for double jeopardy purposes the capital sentencer should be seen as rendering a series of mini-verdicts on each aggravating circumstance. See also *Arizona* v. *Rumsey,* 467 U. S. 203, 209–210 (1984) ("The sentencer—the trial judge in Arizona—is required to choose between two options: death, and life imprisonment without possibility of parole for 25 years").

[4] The Court explained the similarities between the Arizona and Missouri systems as follows:

"The capital sentencing proceeding in Arizona shares the characteristics of the Missouri proceeding that make it resemble a trial for purposes of the Double Jeopardy Clause. The sentencer—the trial judge in Arizona—is required to choose between two options: death, and life imprisonment without possibility of parole for 25 years. The sentencer must make the decision guided by detailed statutory standards defining aggravating and mitigating circumstances; in particular, death may not be imposed unless at least one aggravating circumstance is found, whereas death must be imposed if there is one aggravating circumstance and no mitigating circumstance sufficiently substantial to call for leniency. The sentencer must make findings with respect to each of the statutory aggravating and mitigating circumstances, and the sentencing hearing involves the submission of evidence and the presentation of argument. The usual rules of evidence

trial judge erred in exactly the same way as the trial judge did at petitioners' first sentencing hearing in these cases, by construing the "pecuniary gain" aggravating circumstance as limited to "murder for hire" situations. Unlike the trial judge in this case, however, the trial judge in *Rumsey* found no aggravating circumstances, and entered a sentence of life imprisonment. This Court held that "[t]he double jeopardy principle relevant to [Rumsey's] case is the same as that invoked in *Bullington:* an acquittal on the merits by the sole decisionmaker in the proceeding is final and bars retrial on the same charge." *Id.*, at 211.

Under *Bullington* and *Rumsey*, therefore, the relevant inquiry in the cases before us is whether the sentencing judge or the reviewing court has "decid[ed] that the prosecution has not proved its case" for the death penalty and hence has "acquitted" petitioners. *Bullington*, 451 U. S., at 443.

### III

At no point during petitioners' first capital sentencing hearing and appeal did either the sentencer or the reviewing court hold that the prosecution had "failed to prove its case" that petitioners deserved the death penalty. Plainly, the sentencing judge did not acquit, for he imposed the death penalty. While the Arizona Supreme Court held that the sentencing judge erred in relying on the "especially heinous, cruel, or depraved" aggravating circumstance, it did not hold that the prosecution had failed to prove its case for the death penalty. Indeed, the court clearly indicated that there had been no such failure by remarking that "the trial court mistook the law when it did not find that the defendants 'committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value,'" and that

govern the admission of evidence of aggravating circumstances, and the State must prove the existence of aggravating circumstances beyond a reasonable doubt. . . . [T]hese characteristics make the Arizona capital sentencing proceeding indistinguishable for double jeopardy purposes from the capital sentencing proceeding in Missouri." *Ibid.* (citations omitted).

"[u]pon retrial, if the defendants are again convicted of first degree murder, the court may find the existence of this aggravating circumstance," 132 Ariz., at 286, 645 P. 2d, at 800, 801.

Petitioners argue, however, that the Arizona Supreme Court "acquitted" them of the death penalty by finding the "evidence [insufficient] to support the sole aggravating circumstances found by the sentencer." Brief for Petitioners 16. Petitioners' implicit argument is, first, that the sentencing judge "acquitted" them of the "pecuniary gain" aggravating circumstance, and second, that the Double Jeopardy Clause rendered this "acquittal" final, so that the evidence relating to this circumstance was effectively removed from the case at the time of petitioners' first appeal.[5]

We reject the fundamental premise of petitioners' argument, namely, that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an "acquittal" of that circumstance for double jeopardy purposes. *Bullington* indicates that the proper inquiry is whether the sentencer or reviewing court has "decided that the prosecution has not proved its case" *that the death penalty is appropriate.*[6] We are not prepared

---

[5] Petitioners have not made this argument with any clarity, but we can discern no other plausible basis for their contention that the Arizona Supreme Court "acquitted" them of the death penalty at the time of their first appeal. Any suggestion that the court *intended* to acquit them is negated by the language in *Poland I* and is rendered even more untenable by the court's statement at the time of the second appeal that "[o]ur holding in *Poland I,* however, was . . . not tantamount to a death penalty 'acquittal.'" *State* v. *Poland,* 144 Ariz., at 404, 698 P. 2d, at 199.

Petitioners seem to attach importance to the fact that the prosecution did not cross-appeal the trial judge's finding regarding the "pecuniary gain" aggravating circumstance. However, the Arizona Supreme Court did not accord any significance to the prosecution's failure to cross-appeal, and we certainly cannot say that as a matter of state law the court was precluded from considering the evidence regarding the "pecuniary gain" aggravating circumstance.

[6] See n. 3, *supra.*

to extend *Bullington* further and view the capital sentencing hearing as a set of minitrials on the existence of each aggravating circumstance. Such an approach would push the analogy on which *Bullington* is based past the breaking point.

Aggravating circumstances are not separate penalties or offenses, but are "standards to guide the making of [the] choice" between the alternative verdicts of death and life imprisonment. 451 U. S., at 438. Thus, under Arizona's capital sentencing scheme, the judge's finding of any particular aggravating circumstance does not of itself "convict" a defendant (*i. e.*, require the death penalty), and the failure to find any particular aggravating circumstance does not "acquit" a defendant (*i. e.*, preclude the death penalty).

It is true that the sentencer must find *some* aggravating circumstance before the death penalty may be imposed, and that the sentencer's finding, albeit erroneous, that no aggravating circumstance is present is an "acquittal" barring a second death sentence proceeding. *Arizona* v. *Rumsey*, 467 U. S. 203 (1984). This is because

> "the law attaches particular significance to an acquittal. To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that 'even though innocent he may be found guilty.'" *United States* v. *Scott*, 437 U. S. 82, 91 (1978) (quoting *Green* v. *United States*, 355 U. S. 184, 188 (1957)).

This concern with protecting the finality of acquittals is not implicated when, as in these cases, a defendant is sentenced to death, *i. e.*, "convicted." There is no cause to shield such a defendant from further litigation; further litigation is the only hope he has. The defendant may argue on appeal that the evidence presented at his sentencing hearing was as a matter of law insufficient to support the aggravating circum-

stances on which his death sentence was based, but the Double Jeopardy Clause does not require the reviewing court, if it sustains that claim, to ignore evidence in the record supporting another aggravating circumstance which the sentencer has erroneously rejected. Such a rule would have the odd and unacceptable result of requiring a reviewing court to enter a death penalty "acquittal" even though that court is of the view that the State has "proved its case." Our decisions in *Burks* and *Bullington* do not support such a rule, which would certainly give the prosecution cause to "complain of prejudice." *Burks*, 437 U. S., at 16. We hold, therefore, that the trial judge's rejection of the "pecuniary gain" aggravating circumstance in this case was not an "acquittal" of that circumstance for double jeopardy purposes, and did not foreclose its consideration by the reviewing court. Furthermore, because the reviewing court did not find the evidence legally insufficient to justify imposition of the death penalty, there was no death penalty "acquittal" by that court. The Double Jeopardy Clause, therefore, did not foreclose a second sentencing hearing at which the "clean slate" rule applied.

The judgment of the Supreme Court of Arizona is

*Affirmed.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN and JUSTICE BLACKMUN join, dissenting.

There is one difference between these cases and *Arizona* v. *Rumsey*, 467 U. S. 203 (1984), in which seven Members of this Court interpreted the Double Jeopardy Clause to bar imposition of a death sentence after a life sentence has been reversed on appeal: the sentencing judge in petitioners' cases made two errors of state law, while Rumsey's judge made only one. According to the majority, that makes the difference between life and death.

In *Rumsey*, the defendant was convicted of murder and robbery; the trial judge sentenced him to life imprisonment

upon finding that none of the statutory aggravating circumstances provided by Arizona law applied to the defendant's case. One of those aggravating circumstances—murder committed as consideration for pecuniary gain—the court rejected in the belief that it applied only to murders for hire. On appeal, the Supreme Court of Arizona held that murder for pecuniary gain could also include murder in the course of a robbery. Accordingly, it set aside Rumsey's life sentence and remanded for resentencing. This time, Rumsey was given a death sentence, supported by the aggravating circumstance of murder for pecuniary gain. On writ of certiorari, this Court concluded that the Arizona death-sentencing procedure is equivalent to a trial for purposes of the Double Jeopardy Clause, under the doctrine of *Bullington* v. *Missouri*, 451 U. S. 430 (1981). We then concluded that Rumsey's initial life sentence had constituted an "acquittal" on the merits of the central issue of the proceeding: whether death was the appropriate punishment for the offense. Under traditional double jeopardy principles, retrial of that issue was thereafter precluded, even though the "acquittal" was predicated upon a mistaken interpretation of state law. *Rumsey, supra*, at 211.

Petitioners, Patrick and Michael Poland, were convicted of the murders of two guards in the course of a robbery. Like the trial court in *Rumsey*, the sentencing court rejected the aggravating circumstance of murder for pecuniary gain, believing that it applied only to murders for hire. Unlike the *Rumsey* court, however, the trial judge did not then impose a life sentence. Instead, he concluded that another of the statutory aggravating circumstances was present: that the murders were "especially heinous, cruel, or depraved." Based on this sole aggravating circumstance, therefore, the court sentenced petitioners to death. On joint appeal, the Arizona Supreme Court reviewed the death sentences and concluded that the evidence was insufficient as a matter of state law to establish that the murders had been "especially heinous,

cruel, or depraved," because the State had not proved that the victims had suffered, as state law requires. App. 61. Before remanding, however, the court took the opportunity, *sua sponte*, to note that murder for pecuniary gain was not limited to murders for hire, and therefore was available as a possible alternative basis for a death sentence. On remand, the trial court once more sentenced petitioners to death, again concluding that the murders were "especially heinous, cruel, or depraved," and also that they were committed for pecuniary gain.* The Arizona Supreme Court again reversed the aggravating circumstance of "especially heinous, cruel, or depraved," but this time upheld the death sentences on the ground of pecuniary gain.

The Court makes much of the fact that, unlike Rumsey, petitioners never received sentences of life imprisonment. Yet the majority fails to recognize the teaching of *Burks* v. *United States*, 437 U. S. 1 (1978). In *Burks*, we held that an appellate reversal of a conviction, based on the legal conclusion that the evidence was insufficient to support the verdict, has the same effect under the Double Jeopardy Clause as an acquittal at trial. *Id.*, at 16. "To hold otherwise," the Court concluded, "would create a purely arbitrary distinction between those in petitioner's position and others who would enjoy the benefit of a correct decision by the District Court." *Id.*, at 11. That arbitrary distinction is precisely the one that the Court creates today. The initial death sentences that petitioners received were "convictions," see *Rumsey, supra,* and their reversal for insufficiency of the evidence to support the sole aggravating circumstance found by the sentencing judge must, under *Burks,* be accorded the same effect as an "acquittal" at trial—the same effect as Rumsey's life sentence. As much as Rumsey's life sentence constituted the all-important "acquittal on the merits," even

---

*With respect to petitioner Patrick Poland, an additional aggravating factor was invoked to support the second death sentence, based on events subsequent to the first penalty proceeding.

though predicated on an error of law, so, too, did the reversal of petitioners' death sentences.

The analogy, first drawn in *Bullington* v. *Missouri, supra,* between an acquittal at trial and an "acquittal" of death at sentencing, is not perfect, and the imperfections perhaps can explain the majority's mischaracterization of the issue in these cases. At trial, a defendant is charged with an offense containing certain specified elements; he is either convicted or acquitted of that offense, the trier of fact having concluded that the prosecution has or has not proved all the elements of the offense. The sentencing proceeding, however, is quite different. In Arizona, for example, a death sentence may be imposed if any one of seven statutory aggravating factors is proved. While it might be possible to treat each aggravating circumstance as a separate "offense," of which a defendant is either convicted or acquitted, this Court has taken a different approach. We have said that "on the merits" of a capital proceeding, the "central issue [is] whether death was the appropriate punishment for [the] offense." *Rumsey,* 467 U. S., at 211. Thus, the "offense" for which the defendant receives his "conviction" or "acquittal" is that of the appropriateness of the death penalty, not the elements of any particular aggravating factor. *Ante,* at 153, n. 3.

In these cases, the trial judge found death to be the appropriate punishment because petitioners' offenses were "especially heinous, cruel, or depraved." On appeal, the Arizona Supreme Court held that the sole basis offered by the trial court to support its "conviction" of petitioners was insufficient as a matter of law.

The majority believes that, since other aggravating circumstances might have been found to support the "convictions," it was permissible to remand the cases for further factfinding on those alternative factors. But this overlooks what our cases have said a conviction *is* in the sentencing context — a determination that death is the appropriate penalty, not separate trials on the existence of all statutory aggravat-

ing circumstances, conducted *seriatim*. In these cases, that determination was reversed because there was insufficient evidence to support the ground relied on by the trial judge in reaching it. Any remand for further factfinding on the question whether the death sentence should be imposed was thereafter prohibited. See *Rumsey, supra,* at 211–212. In no other circumstance would the Double Jeopardy Clause countenance the offer of a second chance to the State and the trial judge to find a better theory upon which to base a conviction. Nor should it do so here. I dissent.