883 P.2d 446

**The STATE of Arizona, Appellant,**

v.

**Jaime LOPEZ, Appellee.**

**No. 2 CA–CR 92–0481.**

Court of Appeals of Arizona, Division 2, Department B.

Feb. 28, 1994.

Review Granted on Issue 2 and Denied on other Issues Nov. 1, 1994.

Stephen D. Neely, Pima County Atty. by Christina M. Cabanillas, Tucson, for appellant.

Susan A. Kettlewell, Pima County Public Defender by Creighton Cornell, Tucson, for appellee.

## OPINION

ESPINOSA, Presiding Judge.

The State of Arizona appeals under A.R.S. § 13-4032(6) from the trial court's order granting appellee Jaime Lopez's motion to preclude the testimony of three witnesses. The witnesses, officers with the Tucson Police Department, had been hypnotized during the investigation leading to Lopez's indictment for one count of third-degree burglary and three counts of aggravated assault. We reverse the trial court's order and remand the matter for further proceedings.

### Factual and Procedural Background

The charges against Lopez arose from an October 25, 1980 incident during a Tucson Police Department undercover operation in the parking lot of the Tucson Convention Center. In an attempt to apprehend a burglary suspect, Officers Peter Duerr and Craig Holmes hung onto the suspect's car. As the suspect sped away, the officers were thrown off the vehicle and injured, one seriously. The suspect's vehicle headed directly towards Officer Robert DeDeyn, who jumped out of the way to avoid being hit. Officer Ruth Ann Pfeffer, who witnessed the incident, and DeDeyn prepared written reports. Pfeffer, DeDeyn, and Holmes gave tape-recorded statements describing the incident on October 26. On October 27, Drs. Russell and Lindsey conducted hypnotic sessions with Pfeffer, DeDeyn, and Holmes, which resulted in a composite description of the suspect. After police received an 88-Crime tip, Lopez was indicted, and an arrest warrant was issued.

Lopez was not apprehended until 1991. Prior to trial, he moved to preclude the testimony of Pfeffer, DeDeyn, and Holmes, arguing that posthypnotic testimony is unreliable and per se inadmissible. He further argued that their prehypnotic testimony was inadmissible under supreme court decisions and because certain procedures were not followed during the officers' hypnosis. The trial court granted Lopez's motion. The state's motion to dismiss without prejudice was granted, and this appeal followed.

### Discussion

To guard against the adverse effects of hypnosis on the reliability of testimony, our supreme court held that "testimony from witnesses who have been questioned under hypnosis regarding the subject of their offered testimony [is] inadmissible in criminal trials from the time of the hypnotic session forward." *State v. Mena,* 128 Ariz. 226, 232, 624 P.2d 1274, 1280 (1981). The court noted that its holding placed the state in a difficult position in deciding whether to use hypnosis as an investigatory tool, but declined to decide the issue of the state's ability to preserve a witness's prehypnotic testimony by deposition. *Id.* at n. 1. Subsequently, in *State ex rel. Collins v. Superior Court,* 132 Ariz. 180, 644 P.2d 1266 (1982), the court followed *Mena* in holding that the testimony of a hypnotized witness is per se inadmissible

and that such a witness is incompetent to testify about any subject of the hypnosis session, including matters recalled prior to hypnosis. The court further held that *Mena* was to be applied prospectively only. 132 Ariz. at 190, 644 P.2d at 1276. However, in its supplemental opinion on rehearing,[1] the court expressly modified its position and held that hypnosis does not render a witness incompetent to testify to facts that were demonstrably recalled and related prior to hypnosis. 132 Ariz. at 209, 644 P.2d at 1295. The court reaffirmed that holding in *State ex rel. Neely v. Sherrill,* 165 Ariz. 508, 799 P.2d 849 (1990), confirming that prehypnotic testimony that is demonstrably recalled prior to hypnosis is admissible.

In granting Lopez's motion in this case, the trial court found that *Collins II* did not disturb the *Collins I* holding on prospective application and concluded "under Collins I and the prospective application analysis, this case with its unique facts falls within the Mena holding. Therefore, the Court is mandated to preclude the testimony of the hypnotized witnesses in its entirety."

On appeal, the state contends that the trial court abused its discretion in finding that *Mena* precluded the officers' testimony about matters they recalled and reported prior to being hypnotized. The state argues that the officers' prehypnotic testimony is admissible under *Collins II* because it is "demonstrably recorded" in the officers' reports and taped statements. Lopez, however, contends that under the "prospective only" language of *Collins I,* the officers' testimony was properly precluded because they were hypnotized prior to the *Mena* decision. Lopez further argues that the officers' testimony regarding their prehypnotic recall is inadmissible because none of the Orne guidelines was followed during their hypnotic sessions,[2] any records that may have been made of the

hypnotic sessions no longer exist, and the hypnotist does not remember the sessions.

In *Collins II,* after extensive discussion about the unreliability and inherent dangers of hypnotic recall, the supreme court modified the rule of witness preclusion set out in *Mena* and *Collins I* to allow the investigatory use of hypnosis without rendering the witness incompetent to testify. The court found in *Collins II* that the dangers accompanying the investigatory use of hypnosis were outweighed by its potential benefits and could be minimized through cross-examination. The court then stated:

> We further minimize the risk by requiring that before hypnotizing a potential witness for investigatory purposes, the party intending to offer the prehypnotic recall appropriately record in written, tape recorded or, preferably, videotaped form the substance of the witness' knowledge and recollection about the evidence in question so that the prehypnotic recall may be established. Such recordation must be preserved so that at trial the testimony of that witness can be limited to the prehypnotic recall. If such steps are not taken, admission of the prehypnotic recall will be error, which, if prejudicial, will require reversal.

> Further, parties intending to use hypnosis for investigatory purposes should make sure that the hypnosis procedure is performed in a manner designed to minimize the danger of contamination of both prehypnotic and posthypnotic recall. A record of that procedure should be made and retained. While we do not impose any particular set of standards for that purpose, we suggest that litigants adopt some, if not all of the Orne standards referred to above. Any litigant intending to offer testimony of a witness who has been hypnotized must make timely disclosure of such information to the court and to opposing counsel.

---

1. Hereafter, the original opinion in *State ex rel. Collins v. Superior Court, supra,* will be referred to as *"Collins I"* and the supplemental opinion on rehearing, 132 Ariz. at 193, 644 P.2d at 1279, will be referred to as *"Collins II."*

2. Dr. Martin T. Orne, an authority on the use of hypnosis, has compiled a set of procedural safe-

guards for the introduction of hypnotically refreshed testimony, which the New Jersey Supreme Court adopted in *State v. Hurd,* 86 N.J. 525, 432 A.2d 86 (1981). For a discussion of the Orne guidelines, *see Collins II* at 202–07, 644 P.2d at 1288–93.

132 Ariz. at 210, 644 P.2d at 1296. In modifying the rule of witness preclusion, the court did not address the prospective application analysis of *Collins I*. Because the prospective application analysis was inexorably interwoven with the holding, however, we find that the court impliedly modified that analysis as well, limiting its applicability to hypnotically refreshed testimony.

The case law subsequent to *Collins II* has required only that it be demonstrably shown that prehypnotic recall was recorded prior to hypnosis in order to be admissible. In *State ex rel. Neely v. Sherrill*, the supreme court expressly affirmed the "bright-line rule" intended by *Collins II*, that "post-hypnotic recall is inadmissible, but pre-hypnotic recall is admissible provided it has been recorded prior to hypnosis." 165 Ariz. at 511, 799 P.2d at 852. The court did not mention the Orne standards or any other foundational requirements. In *State v. McMurtrey*, 136 Ariz. 93, 664 P.2d 637, *cert. denied*, 464 U.S. 858, 104 S.Ct. 180, 78 L.Ed.2d 161 (1983), the court held that the testimony of a witness hypnotized prior to trial was properly limited to those matters contained in a taped statement given prior to his being hypnotized. As is the case here, the witness was hypnotized prior to *Mena*, and his proffered testimony was post-*Mena*. Again, there was no reference to foundational requirements. We conclude, therefore, that the suggestion in *Collins II* that the Orne standards be followed when "parties intend[ ] to use hypnosis for investigatory purposes" is not a foundational requirement to the admission of testimony about those matters that were recalled and recorded prior to hypnosis, at least for cases arising before *Collins II*.

Accordingly, Officers Pfeffer, DeDeyn, and Holmes are competent to testify, but their testimony must be limited only to those matters demonstrably recalled and recorded in their prehypnotic reports and statements. *See State v. Poland*, 144 Ariz. 388, 698 P.2d 183 (1985), *aff'd*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986) (FBI and police reports sufficient to segregate prehypnotic recall from posthypnotic testimony). *See also State v. McMurtrey, supra* (witness's testimony properly limited to matters recorded in prehypnotic statement).

The trial court's order precluding the testimony of Officers Pfeffer, DeDeyn, and Holmes is reversed. We remand for a hearing to determine the extent of the witnesses' prehypnotic recall and the permissible scope of their testimony and for further proceedings consistent with this decision.

DRUKE, C.J., and HATHAWAY, J., concur.