**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TERRY D. BEMORE, | No. 12-99005 |
| Petitioner - Appellant, | D.C. No. 3:08-cv-00311-LAB-WVG |
| v. | |
| KEVIN CHAPPELL, Warden, | MEMORANDUM* |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted September 10, 2014
San Francisco California

Before: REINHARDT, GOULD, and BERZON, Circuit Judges.

Terry Bemore appeals denial of habeas relief from his first degree murder
conviction and death sentence. In an opinion filed concurrently with this
memorandum, we address Bemore's claims of ineffective assistance by his trial
counsel. We resolve the remainder of his claims here.

---

  *     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

**1.** The California Supreme Court reasonably applied Supreme Court law, 28 U.S.C. § 2254(d)(1), in concluding that the state did not violate *Brady v. Maryland*, 373 U.S. 83 (1963), or *Napue v. Illinois*, 360 U.S. 264 (1959), in connection with the testimony of Latonya Wadley, Kim Strickler, Troy Patterson, Glen Heflin, and Echo Ramey. Bemore has not shown "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1983) (opinion of Blackmun, J.)); *see also Morris v. Ylst*, 447 F.3d 735, 745 (9th Cir. 2006) ("The test for prejudice for a [*Napue*] claim is the same as that for materiality in a *Brady* claim.").

The state did not disclose that it helped Wadley and Strickler obscure their whereabouts before trial: Wadley was given room and board in kind, while Strickler had her food stamps and Medi-Cal card forwarded so that her address was not searchable through social services registries. Evidence of this assistance is "favorable" to the defense, but does not meet the additional requirement of materiality, *Brady*, 373 U.S. at 87, as it is improbable that the jury would have believed Strickler's and Wadley's testimony was biased because of it. *See Bagley*, 473 U.S. at 675. Rather, had the jurors known of these protective actions, they

2

would likely have drawn the adverse inference that Wadley and Strickler feared retaliation for testifying.

No Brady violation arose from the fact the Heflin and Patterson received prison transfers. A tape recording discussing Heflin's transfer was disclosed to the defense, and the transfer was effectively disclosed to the jury in McKechnie's cross examination of Heflin. Additionally, the jury knew that Heflin was a repeat jailhouse informant and had received a five-year sentence reduction in exchange for his testimony. Any additional loss of credibility that he might have suffered in the eyes of the jury due to the promise of a prison transfer was not likely to alter the results of the proceeding. *Kyles*, 514 U.S. at 433. As to Patterson, the memo from District Attorney Stephen Anear arranging a possible prison transfer was not material for the same reason that the services for Wadley and Strickler were not material—if disclosed, it would have indicated that Patterson feared retaliation.

Patterson and Ramey made potentially misleading and possibly false statements on the stand: Patterson, regarding whether the state arranged his prison transfer, whether he was offered a deal in exchange for his testimony, whether the police told him he was a suspect in Muck's murder, and whether he was on trial for attempted murder; Ramey, about observing Bemore the night of Muck's murder. It is not clear these statements were false, but a "prudent prosecutor" might have

3

sought correction or clarification before the jury. *United States. v. Agurs*, 427 U.S. 97, 108 (1976). Nevertheless, given the other testimony against Bemore, it was not an unreasonable application of *Napue* for the state court to conclude there was no prejudice. *See Ylst*, 447 F.3d at 745. Patterson admitted he had asked the state for a prison transfer and that he had indeed been transferred; he also acknowledged that he had previous felony convictions and that he had been offered a five-year sentence reduction for cooperating with the investigation. Ramey's testimony, if indeed it was false, was cumulative, as there were numerous witnesses who gave similar testimony about Bemore's behavior the night of the murder.

**2.** The California Supreme Court reasonably denied the claim that state appellate counsel, Matthew Newman, was constitutionally ineffective and had a conflict of interest. Counsel was not ineffective for conceding the torture special circumstance in the reply brief.

A criminal appellate counsel has no "constitutional duty to raise every nonfrivolous issue requested by the defendant." *Jones v. Barnes*, 463 U.S. 745, 746 (1983); *see also id.* at 751–54. By contrast, counsel has "wide latitude . . . in making tactical decisions." *Strickland v. Washington*, 466 U.S. 674, 689 (1984). Further, the California Supreme Court addressed the torture claim anyway and

4

offered numerous reasons to support its holding that the evidence supported the verdict.

In any event, with respect to his conflict of interest claim, Bemore has not shown how the alleged conflict affected the quality of Newman's representation—specifically, how or why a conflict between his roles as a prosecutor and as Bemore's attorney caused him not to contest the torture special circumstance in his brief, or why Newman's political campaigning affected the quality of his representation. *Cuyler v. Sullivan*, 446 U.S. 335, 348–350 (1980). Finally, any breakdown in communication between Bemore and his attorney does not justify relief without a showing that it affected counsel's performance. *Cuyler*, 446 U.S. at 348.

**3.** The California Supreme Court was reasonable to reject Bemore's claims of instructional error at the penalty phase. Bemore acknowledges that Supreme Court precedent holds that a jury may consider prior unadjudicated offenses at sentencing. *See Nichols v. United States*, 511 U.S. 738, 747 (1994). He likewise offers no Supreme Court authority holding that a jury must find each aggravating factor at the penalty stage unanimously. *Apprendi v. New Jersey*, 530 U.S. 466 (2000), addressed sentence-enhancing factors, not factors at a capital sentencing that "guide the making of [the] choice between the alternative verdicts of death and

life imprisonment." *Poland v. Arizona*, 476 U.S. 147, 156 (1986) (alteration in original) (quoting *Bullington v. Missouri*, 451 U.S. 430, 438 (1981)) (internal quotation mark omitted).  Excerpts from Supreme Court opinions speaking to a general need for reliability in capital proceedings do not amount to binding precedent on an otherwise open question. *See Carey v. Musladin*, 549 U.S. 70, 76–77 (2006).

**4.**  Because we vacate Bemore's death sentence in the concurrently filed opinion, we do not address his claims that California's death penalty scheme is unconstitutional because it is arbitrary and capricious, and constitutes cruel and unusual punishment.

AFFIRMED.