# Supreme Court of Florida

_____

No. SC16-1032
_____

**ERIESE ALPHONSO TISDALE,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

November 8, 2018
**CORRECTED OPINION**

PER CURIAM.

Eriese Alphonso Tisdale was convicted of one count of first-degree murder of a law enforcement officer, one count of aggravated assault on a law enforcement officer with a firearm, one count of possession of a firearm by a convicted felon, and one count of eluding or fleeing a police officer with lights and siren. After the penalty phase, the jury recommended a sentence of death by a vote of nine to three on the murder charge and the trial court imposed a death sentence, with lesser sentences on the other charges. This is Tisdale's direct appeal, and we have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const.

Tisdale raises no issues relating to his guilt phase trial and we find the evidence sufficient to support the murder charge.[1]  Accordingly, we affirm all convictions.  Tisdale's only sentencing issues relate to the sentence of death, and we affirm without discussion the sentences on all lesser convictions.  However, we vacate his death sentence because we cannot conclude that the *Hurst*[2] error in his case was harmless beyond a reasonable doubt.  Accordingly, we remand his case to the trial court for a new penalty phase pursuant to *Hurst*.

**FACTS**

On the morning of February 28, 2013, Sergeant Gary Morales of the St. Lucie County Sheriff's Office conducted a traffic stop on a vehicle being driven by Tisdale, a convicted felon.  Tisdale, the sole occupant of his vehicle, attempted to flee as Sergeant Morales radioed for backup and pursued Tisdale.  Tisdale stopped in a residential neighborhood, catching the attention of multiple residents.  Sergeant Morales drove slightly past Tisdale and then came to a sudden stop as well.  As Sergeant Morales backed up his patrol car and opened his driver's side

---

1.  Although Tisdale does not contest the sufficiency of the evidence with respect to any charge, this Court has a mandatory obligation in every capital case to ensure that the evidence is sufficient to support any murder conviction. *Dausch v. State*, 141 So. 3d 513, 517 (Fla. 2014).

2.  *Hurst v. State* (*Hurst*), 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017).

door, Tisdale rapidly exited his vehicle with a drawn handgun, rushed Sergeant Morales before Morales could leave the seat of his patrol car or access his own firearm, and fired a burst of shots into the vehicle, hitting Sergeant Morales three times and killing him. Three eye-witnesses—one police officer and two civilians—witnessed Tisdale fire the fatal shots. Tisdale then ran back toward his vehicle while aiming his gun at another police officer who had responded to Sergeant Morales' call for backup, jumped back into his vehicle, and continued his flight. Several officers pursued Tisdale with their lights and sirens activated.

Eventually, one of the pursuing deputies rammed Tisdale's vehicle, causing it to "spin out" and ending the chase. Tisdale was arrested without further incident at the scene of the collision. Police seized Tisdale's handgun, used in the shooting, from the vehicle at the time of his arrest. A forensic biologist testified at trial that the DNA found on Tisdale's gun matched DNA samples obtained from Tisdale. The firearms examiner testified that the seven shell casings recovered from the area where Tisdale exited his vehicle and ran toward Sergeant Morales's car had been fired from Tisdale's gun. Forensic experts also linked bullets recovered from Sergeant Morales's body and vehicle to Tisdale's gun.

## RELEVANT PROCEDURAL HISTORY

Tisdale's jury returned its guilty verdicts on October 1, 2015. After hearing evidence bearing on an appropriate sentence, the jury returned its penalty phase

verdict on October 9, 2015, with nine of the twelve jurors recommending death. At the time, section 921.141(3), Florida Statutes (2015), authorized a trial judge to impose a death sentence following a death recommendation by at least seven jurors. The judge released the jurors from further service immediately after receiving the penalty phase recommendation.

The court held a *Spencer*[3] hearing on November 17, 2015, and then set a final sentencing for January 15, 2016.

On January 12, 2016, three days before the scheduled sentencing, the United States Supreme Court issued its decision in *Hurst v. Florida*, 136 S. Ct. 616, 624 (2016), declaring "Florida's sentencing scheme" unconstitutional. The trial court postponed sentencing and eventually reset the sentencing hearing for May 9, 2016. Prior to sentencing, the Florida Legislature enacted chapter 2016-13, Laws of Florida, which became effective on March 7, 2016. The new law authorized imposition of the death penalty, but only if at least ten jurors recommended a death sentence. *See* § 921.141(2)-(3), Fla. Stat. (2016).

Over Tisdale's objection that death was no longer a valid legal sentence without at least ten jurors voting to recommend the death penalty, the trial court imposed a death sentence under section 921.141(3) as to the murder charge,

---

3. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

finding the nonunanimous death recommendation to be harmless beyond a reasonable doubt in light of the jury's unanimous verdict on charges that would factually establish two aggravating factors: (1) the victim of the capital felony was a law enforcement officer engaged in lawful performance of his duties; and (2) a prior violent felony conviction (based on the contemporaneous conviction of aggravated assault on a law enforcement officer with a firearm). The trial court relied only on the two aggravating factors found by the jury as part of its verdict, assigning great weight to both.[4] The portion of chapter 2016-13 authorizing

---

4. The trial court found the following nonstatutory mitigating circumstances and assigned the noted weight: (1) Tisdale was twenty-five years old when he committed the murder (very little weight); (2) Tisdale had a hereditary predisposition to substance abuse and dependence (very little weight); (3) Tisdale's family history includes generational dysfunction (very little weight); (4) Tisdale was exposed to cocaine while a fetus (very little weight); (5) Tisdale was raised by a single mother (very little weight); (6) Tisdale's genetic father is unknown (very little weight); (7) Tisdale's father was absent (moderate weight); (8) Tisdale's father was incarcerated for robberies and died in prison (almost no weight); (9) Tisdale suffered physical punishment as a child by his mother's boyfriend (very little weight); (10) Tisdale's mother abused him (almost no weight); (11) Tisdale observed domestic violence in the home (little weight); (12) Tisdale frequently changed schools as a child (very little weight); (13) Tisdale experienced residential instability (slight weight); (14) Tisdale had two stepfathers (very little weight); (15) Tisdale had corruptive male role models (very little weight); (16) Tisdale's cousin was murdered (moderate weight); (17) Tisdale experienced racism growing up (almost no weight); (18) Tisdale lived in a corruptive community (very little weight); (19) Tisdale grew up in a violent community (minimal weight); (20) Tisdale experienced instances of police harassment (very little weight); (21) Tisdale had poor grades (very little weight); (22) Tisdale used marijuana regularly (very little weight); (23) Tisdale marginally adjusted as a young adult (very little weight); (24) Tisdale is a devoted, loving son (moderate weight); (25) Tisdale is a

imposition of a death sentence based upon a recommendation of ten jurors would later be declared unconstitutional in *Perry v. State*, 210 So. 3d 630, 640 (Fla. 2016) (applying *Hurst*, which held that a death sentence could not be legally imposed absent a unanimous death recommendation by the penalty phase jury).

## ANALYSIS

Tisdale raises three issues on appeal: (1) whether chapter 2016-13 entitles him to a life sentence without the possibility of parole; (2) whether he is entitled to automatic commutation of his death sentence to a life sentence without the possibility of parole pursuant to section 775.082(2), Florida Statutes (2012); and (3) whether he is entitled to a new penalty phase pursuant to *Hurst*. Having found the evidence sufficient to support Tisdale's first-degree murder conviction, we

---

loving father (very little weight); (26) Tisdale is a giving person and is selfless (almost no weight); (27) Tisdale has a good personality (almost no weight); (28) Tisdale was a pleasant and likeable child (very little weight); (29) Tisdale graduated from high school (moderate weight); (30) Tisdale earned his associate of arts degree (moderate weight); (31) Tisdale has artistic abilities (very little weight); (32) Tisdale has a loving relationship with his family (very little weight); (33) Tisdale has matured and is remorseful (almost no weight); (34) Tisdale attended church and was spiritual (very little weight); (35) Tisdale had a good employment record (moderate weight); (36) Tisdale has good conduct in jail (very little weight); (37) Tisdale will adjust to life in prison and will most likely not be dangerous in the future (very little weight); (38) Tisdale demonstrates high potential for rehabilitation (very little weight); (39) Tisdale would contribute positively in prison (almost no weight); (40) Tisdale has no juvenile history (moderate weight); and (41) Tisdale has no violent criminal history before February 28, 2013 (moderate weight).

- 6 -

address Tisdale's claims that he is entitled to relief pursuant to *Hurst*, as well as his alternative claims that we should remand for a life sentence.

**Chapter 2016-13**

Tisdale first argues that chapter 2016-13 should apply to his case and entitles him to a life sentence without the possibility of parole based upon double jeopardy principles. We reject this argument. Tisdale's jury was sworn and rendered its recommendation before the passage of chapter 2016-13. Because the recommendation supported imposition of the death penalty at the time the jury was sworn and jeopardy attached, double jeopardy principles do not bar a new penalty phase trial. *Cf. Victorino v. State*, 241 So. 3d 48, 50 (Fla. 2018) (determining that a defendant sentenced to death following nonunanimous jury recommendations "has not been acquitted of the death penalty" when the law at the time of trial would have permitted a death sentence, such that retrial is not barred by double jeopardy); *see also, Hurst v. State*, No. SC17-302, 2017 WL 1023762, at *1 (Fla. Mar. 16, 2017) (summarily rejecting as "without merit" claims based on double jeopardy grounds that the State is precluded from seeking the death penalty in *Hurst* resentencing proceedings); *Poland v. Arizona*, 476 U.S. 147, 154-57 (1986) (holding that reimposing the death penalty on petitioners did not violate the Double Jeopardy Clause because neither the sentence nor the reviewing court held that the prosecution had not proved its case that the death penalty was not appropriate).

Moreover, we have invalidated the provision of chapter 2016-13 on which Tisdale attempts to rely for this argument. *See Perry*, 210 So. 3d at 640; *Evans v. State*, 213 So. 3d 856, 859 (Fla. 2017) (holding that chapter 2016-13—but not the portion authorizing a 10-2 vote requirement for the jury's final recommendation—can be validly applied to pending prosecutions).

**Section 775.082(2), Florida Statutes**

Next, Tisdale argues that he is entitled to automatic commutation of his death sentence to a life sentence without the possibility of parole pursuant to section 775.082(2), Florida Statutes (2012). We have consistently rejected this argument in other similar cases, *see, e.g.*, *Caylor v. State*, 218 So. 3d 416, 425 (Fla. 2017) (denying defendant's claim that section 775.082(2) mandates commutation to a life sentence and remanding for a new penalty phase pursuant to *Hurst*), and reject Tisdale's argument for the reasons explained in *Caylor*. *Id.*

### *Hurst*

Finally, Tisdale argues that our *Hurst*-related precedent requires reversal of his death sentence. We agree, vacate Tisdale's death sentence, and remand for a new penalty phase pursuant to *Hurst*.

In *Hurst v. Florida*, 136 S. Ct. 616, 619 (2016), the Supreme Court held that Florida's capital sentencing scheme was unconstitutional, because "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a

- 8 -

sentence of death. A jury's mere recommendation is not enough." On remand, we held that *Hurst* error occurs when the jury does not unanimously find the existence of any aggravating factor, that the aggravating factors are sufficient to impose death, and that the aggravation outweighs the mitigation. *Hurst*, 202 So. 3d at 54. We further held that the jury recommendation for death must be unanimous before the court may impose a death sentence. *Id.* We also determined that *Hurst* error is capable of harmless error review. *See id.* at 67.

"New rules of law set down by this Court, or by the United States Supreme Court, apply to cases on direct review or those not otherwise finalized." *See Deviney v. State*, 213 So. 3d 794, 799 (Fla. 2017). Tisdale's case is on direct appeal, and thus his appeal is subject to *Hurst*, *see id.*, which requires reversal of the death sentence based upon the nonunanimous recommendation. *Cf. Kopsho v. State*, 209 So. 3d 568, 570 (Fla. 2017) (concluding that Kopsho's death sentence violated *Hurst* "[b]ecause Kopsho was condemned by a vote of ten to two"). And, we have consistently held that *Hurst* error is not harmless in cases where the jury's recommendation is not unanimous. *See, e.g.*, *Hojan v. State*, 212 So. 3d 982, 1000 (Fla. 2017) (determining that *Hurst* error was not harmless because the jury did not return a unanimous recommendation for death).

Accordingly, we vacate Tisdale's sentence of death and remand for a new penalty phase pursuant to *Hurst*.[5]

**CONCLUSION**

For the foregoing reasons, we affirm Tisdale's convictions, affirm the sentences on all lesser charges, vacate the death sentence imposed on the charge of first-degree murder of a law enforcement officer, and remand this case for a new penalty phase pursuant to *Hurst*.

It is so ordered.

PARIENTE, LEWIS, QUINCE, and LABARGA, JJ., concur.
PARIENTE, J., concurs with an opinion.
LAWSON, J., concurs specially with an opinion.
CANADY, C.J., and POLSTON, J., concur as to the convictions and the noncapital sentences and dissent as to the death sentence.

ANY MOTION FOR REHEARING OR CLARIFICATION MUST BE FILED WITHIN SEVEN DAYS.  A RESPONSE TO THE MOTION FOR REHEARING/CLARIFICATION MAY BE FILED WITHIN FIVE DAYS AFTER THE FILING OF THE MOTION FOR REHEARING/CLARIFICATION. NOT FINAL UNTIL THIS TIME PERIOD EXPIRES TO FILE A REHEARING/CLARIFICATION MOTION AND, IF FILED, DETERMINED.

---

5. Because we conclude that Tisdale is entitled to a new penalty phase pursuant to *Hurst*, we decline to address the proportionality of his death sentence. *See Bargo v. State*, 221 So. 3d 562, 570 (Fla. 2017) (holding that because defendant was entitled to *Hurst* relief, this Court need not address the proportionality of his death sentence).

PARIENTE, J., concurring.

I concur with the per curiam opinion reversing Tisdale's death sentence and remanding for a new penalty phase pursuant to *Hurst*[6] based on the jury's nonunanimous recommendation for death by a vote of nine to three. I also agree that Tisdale is not entitled to have his sentence reduced to life despite the unusual timing of the jury's recommendation for death and the trial court's sentencing in this case.[7]

I write separately to emphasize the significant mitigation in this case, in particular the substantial early childhood adversity Tisdale experienced, including exposure to cocaine in utero, being raised by a single parent, having a father who was incarcerated, and witnessing domestic violence at home. All of these experiences are properly classified as Adverse Childhood Experiences (ACEs).[8]

---

6. *Hurst v. State* (*Hurst*), 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017); *see Hurst v. Florida*, 136 S. Ct. 616 (2016).

7. The jury's recommendation for death was before *Hurst v. Florida*, 136 S. Ct. 616, but the sentencing occurred after *Hurst v. Florida* and after the Legislature passed the first new sentencing law in light of *Hurst v. Florida*. *See* ch. 2016-13, Laws of Fla.

8. *See* Vincent J. Felitti, et al., *Relationship of Childhood Abuse and Household Dysfunction to Many of the Leading Causes of Death in Adults. The Adverse Childhood Experiences (ACE) Study*, 14 Am. J. Prev. Med. 245-58 (1998). There is an "enormous body of research" on ACEs and their effect on children into their adult lives. Kathleen Wayland, *The Importance of Recognizing Trauma Throughout Capital Mitigation Investigations and Presentations*, 36 Hofstra L. Rev. 923, 927 (2008); *see, e.g.*, Heather C. Forkey, *Children Exposed to Abuse and*

*See Jackson v. State*, 213 So. 3d 754 (Fla. 2017); *State v. Bright*, 200 So. 3d 710, 726 (Fla. 2016).

This Court has explained the ACE study, "which identifies ten factors that suggest trauma and adverse environments," stating:

> The factors indicative of trauma are: (1) childhood physical abuse; (2) childhood verbal abuse; (3) childhood sexual abuse; (4) childhood physical neglect; (5) childhood emotional neglect; and (6) domestic violence in the household. The factors indicative of an adverse environment are: (7) parents who are separated or divorced; (8) growing up in a household where someone is incarcerated; (9) growing up in a household where there is someone with a serious alcohol or drug problem; and (10) growing up in a household where there is someone with serious mental illness. If a person encounters just one of those factors, then that person is considered significantly more at risk for psychological and mental problems. Furthermore, the more factors applicable, the higher the risk. For instance, an individual who has experienced five ACE factors is predicted to live twenty years less than an individual without any ACE factor.

*Bright*, 200 So. 3d at 726; *accord Ellerbee v. State*, 232 So. 3d 909, 929 (Fla. 2017). "Only one-tenth of one percent (or one in one thousand people) are exposed to more than seven ACEs. . . . A high exposure to ACEs . . . is correlated to an increased risk of substance abuse, depression, domestic violence, and suicide,

---

*Neglect: The Effects of Trauma on the Body and Brain*, 30 J. Am. Acad. Matrim. Law. 307, 310-15 (2018); *Adverse Childhood Experiences (ACEs)*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/violenceprevention/acestudy/ (last visited Sept. 26, 2018); *see also Research*, ACEs Too High, https://acestoohigh.com/research/ (last visited Sept. 26, 2018) (listing studies on ACEs since Dr. Felitti's 1998 study).

- 12 -

among other negative outcomes." *Ellerbee*, 232 So. 3d at 929. An increased number of ACEs affects a child's health and brain development.

In fact, recent studies performed by our own Department of Juvenile Justice show that a large percentage of our delinquent youth have high ACE scores. Mark A. Greenwald, Fla. Dep't Juv. Just., *Adverse Childhood Experiences: ACEs and Juvenile Offenders* 8, 17 (Jan. 13, 2015), http://www.djj.state.fl.us/docs/research2/ace_studies_(nationally_and_in_florida)_ (1-13-15).pdf?sfvrsn=2. In addition, the Department of Juvenile Justice reports that ACEs cause long-term effects, including dissociation, homelessness, and delinquency/criminal behavior. *Id.* at 6-7.

In this case, the record makes clear that Tisdale's childhood included many ACEs. Specifically, Tisdale experienced physical abuse, emotional abuse, emotional neglect, domestic violence in the household between his mother and her boyfriend, and grew up in a household where someone was incarcerated, all of which have been proven to adversely affect a child's development. The defense alleged in its sentencing memorandum that Tisdale suffered from all of the following: hereditary predisposition to substance abuse and dependence; generational family dysfunction and distress; prenatal cocaine exposure; raised by a single mother; ambiguous paternity; his father's absence, criminality, and imprisonment; emotional and supervisory neglect by his mother; frequent school

- 13 -

changes (seven schools between kindergarten and 12th grade); residential instability (over six residences by age eight); sequential stepfather figures; corruptive male role models in his extended family; murder of his maternal first cousin; community racism; corruptive community; community violence; police profiling/harassment/violence; inconsistent school performance; marijuana dependence from age fifteen; and marginal young adult adjustment. Am. Sentencing Order, at 8-9.

Further, during the penalty phase, Dr. Garbarino, a professor of psychology and developmental psychologist who evaluated Tisdale, testified that Tisdale's development was negatively affected by the absence of a father figure, racism, and the use of violence in his raising. Dr. Garbarino also testified that Tisdale experienced more adversity than 98% of other youth.

It is clear that Tisdale's childhood was fraught with "trauma and adverse environments," all of which should be considered in determining the appropriate sentence in this case. *Bright*, 200 So. 3d at 726. While this type of mitigation does not serve as an "excuse" for committing a violent act and especially the ultimate violent act—murder—it is important that judges and juries understand its significance in shaping a defendant's development and choices when evaluating mitigation.

Accordingly, I concur in the reversal for a new penalty phase.

- 14 -

LAWSON, J., concurring specially.

I fully concur in that portion of the opinion affirming Tisdale's conviction and concur specially in the reversal of Tisdale's death sentence. *See Okafor v. State*, 225 So. 3d 768, 775-76 (Fla. 2017) (Lawson, J., concurring specially).

An Appeal from the Circuit Court in and for St. Lucie County,
    Dan L. Vaughn, Judge - Case No. 562013CF000608AXXXXX

Jeffrey H. Garland of Jeffrey H. Garland, P.A., Fort Pierce, Florida,

    for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, Lisa-Marie Lerner and Donna M. Perry, Assistant Attorneys General, West Palm Beach, Florida,

    for Appellee